**Wilma L. BRANNON and Charlene Thomas, Plaintiffs,**

v.

**BOATMEN'S BANCSHARES, INC.; Boatmen's First National Bank of Oklahoma; and T.B.A. of Oklahoma, Inc., Defendants.**

No. CIV-96-1125-C.

United States District Court, W.D. Oklahoma.

Jan. 17, 1997.

Tomme J. Fent, Gregory S. Eldridge and Julie L. Gardner of Community Legal Services, Oklahoma City, OK; Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Daniel P. Lindsey of Edelman & Combs, Chicago, IL, for plaintiffs.

Mark S. Grossman and Steven W. Ballard of Crowe & Dunlevy; Joe E. Edwards of Day Edwards Federman Propester & Christensen, Oklahoma City, OK; Michael P. Casey of Lewis Rice & Fingersh, St. Louis, MO; and Susan Moebius Henderson of Oklahoma City, OK, for defendants.

### MEMORANDUM OPINION AND ORDER OF DISMISSAL

CAUTHRON, District Judge.

Now at issue before the Court are the motions of defendants Boatmen's Bancshares ("Bancshares"), Boatmen's First National Bank of Oklahoma ("Boatmen's"), and T.B.A. of Oklahoma, Inc. ("T.B.A.") to dismiss the claims of plaintiffs Wilma L. Brannon and Charlene Thomas in accordance with Fed. R.Civ.P. 12(b)(6). As discussed more fully below, the Court finds that plaintiffs' RICO claims against defendants Bancshares and Boatmen's should be dismissed. Therefore, as the Court has jurisdiction over plaintiffs' remaining state law claims only by means of supplemental jurisdiction, those claims are dismissed without prejudice to refiling in state court pursuant to 28 U.S.C. § 1367(c)(3).

## I. Background

As a part of its banking business, defendant Boatmen's, a subsidiary of defendant Bancshares, purchased "consumer credit contracts" from various car dealerships written to finance the purchase of motor vehicles. Because the agreement identified the purchased vehicle as collateral for the loan, the contract included provisions requiring the consumer to maintain insurance on the vehicle. If the debtor failed to insure the vehicle, the holder bank, *e.g.*, Boatmen's, could purchase insurance for the vehicle and add that amount to the consumer's debt. Both plaintiffs in the present action allege that Boatmen's "forced placed" such insurance on their financed vehicles. Plaintiffs' complaint alleges that the forced placement of insurance by Boatmen's and Bancshares constituted violations of federal mail fraud statutes and section 1962(c) of the Racketeer Influenced and Corrupt Organizations (RICO) Act of 1970. Defendants are also charged with a number of state law claims including violations of the Oklahoma Unfair and Deceptive Trade Practices Act, Oklahoma Uniform Consumer Credit Code, Oklahoma Uniform Commercial Code, and breach of contract.

## II. Discussion

Although defendants' motions to dismiss challenge all of plaintiffs' claims, this Court's original jurisdiction is based upon 28 U.S.C. § 1331, and therefore the Court will first address the issues raised regarding the federal RICO claim. These claims are brought in Counts I and II of the complaint only against defendants Bancshares and Boatmen's.

■■■ This Court may only grant defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) if it " 'appears beyond doubt that plaintiff could prove no set of facts entitling it to relief.' " *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir.1996) (quoting *Ash Creek Mining v. Lujan*, 969 F.2d 868, 870 (10th Cir.1992)). In addition, the Court must "accept as true all well-pleaded facts, and construe all reasonable allegations in the light most favorable to the plaintiff." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206–07, 45

L.Ed.2d 343 (1975)). Within the RICO context, the Tenth Circuit has also ruled that Fed.R.Civ.P. 9(b) requiring fraud to be averred with particularity also applies to "each element of a RICO violation and its predicate acts of racketeering." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir.1992) (citing *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1362 (10th Cir.1989)).[1]

The complaint filed by plaintiffs alleges RICO violations under 18 U.S.C. § 1962(c) which states that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Title 18 U.S.C. § 1964(c) creates a private civil right of action for those who have been injured by a RICO violation under section 1962. Plaintiffs may thereby recover treble damages for injuries sustained through a defendant's pattern of racketeering activity. However, to survive defendants' motion under Rule 12(b)(6), plaintiffs must sufficiently plead the following RICO elements "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)); *see also, Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996) (same, but adding "(5) causing injury to the plaintiff's 'business or property'") (internal citations omitted); *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir.1994).

### RICO Enterprise

Although defendants' motion urges the Court to dismiss plaintiffs' RICO claims for a number of reasons, the primary issue addressed by all parties involves whether plaintiffs have sufficiently pled the existence of an "enterprise" cognizable under the RICO act. Plaintiffs must plead an enterprise contemplated under RICO as an essential element of their claim. Defendants argue that plaintiffs' asserted enterprises do not have sufficient structure or organization to meet the test set out by the Supreme Court in *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981). In addition, the motion attacks plaintiffs' putative enterprises as inadequately separate from the "person" defendant.

The enterprises pled by plaintiffs are as follows: Count I of the complaint asserts RICO violations against Boatmen's and identifies the following enterprises: "(a) Boatmen's Bancshares, Inc.; (b) Boatmen's First National Bank of Oklahoma; and (c) [t]he combination of Boatmen's and the automobile dealers with which it had long-term relationships defined by written contracts, such as Bob Howard and Bob Moore." (Compl. at ¶ 58). Count II of the complaint asserts RICO violations against Bancshares and identifies the following enterprises: "(a) [t]he corporate group headed by Boatmen's Bancshares, Inc.; (b) Boatmen's First National Bank of Oklahoma and the other subsidiaries of Bancshares that purchase retail installment contracts; and (c) [t]he combination of the foregoing and the automobile dealers with which they, or any of them, had long-term relationships defined by written contracts, such as Bob Howard and Bob Moore." (Compl. at ¶ 65).

---

**1.** It is notable that the court in *Farlow* was not required to determine whether elements other than the predicate fraud acts were pled with particularity. *See* 956 F.2d at 989–90. Likewise, in *Cayman Exploration*, the case cited in *Farlow*, the Tenth Circuit appears to take particular care that its holding be limited to the predicate acts element as it never mentions particularity except in relation to the predicate acts of fraud. 873 F.2d at 1362. Limiting the rule to instances involving only fraud, mistake, or condition of the mind is consistent not only with Fed.R.Civ.P. 9(b), but also recognizes the preference expressed in Fed.R.Civ.P. 8(a)(1) that claims for relief be "short and plain." However, because both panels agree that the importance of the complaint providing notice to defendants is heightened in the RICO context due to the potential reputational damage and specter of treble damages, the Court will apply the particularity requirement to all elements as suggested in *Farlow*.

### Structure

■■■ Title 18 U.S.C. § 1961(4) defines an enterprise as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." An enterprise, therefore, can be a legal entity such as a corporation or a less formal association in fact. *See Turkette*, 452 U.S. at 581–82, 101 S.Ct. at 2528. An enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* An enterprise must also be "an entity separate and apart from the pattern of activity in which it engages." *Id.; see also, Chang v. Chen*, 80 F.3d 1293, 1298 (9th Cir.1996); *United States v. Darden*, 70 F.3d 1507, 1520 (8th Cir.1995); *United States v. Sanders*, 928 F.2d 940, 943 (10th Cir.1991); *United States v. Riccobene*, 709 F.2d 214, 222 (3d Cir.1983). From this definition, it is clear that the primary issue in determining whether plaintiffs have pled a cognizable enterprise is structure. *See Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 964 (7th Cir.1996). The structure must be finite and it must be distinct from the alleged pattern of racketeering activity.

■■■ In *Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 645 (7th Cir.1995), the United States Court of Appeals for the Seventh Circuit, the circuit which clearly has had the opportunity to address RICO as often or more often than any other circuit, identified the following characteristics of an enterprise:

A RICO complaint must identify the enterprise. An enterprise must be more than a group of people who get together to commit a pattern of racketeering activity, and more than a group of associated businesses that are operated in concert under the control of one family. The hallmark of an enterprise is structure. There must be a structure and goals separate from the predicate acts themselves. An enterprise can be formal or informal; there need not be much structure, but the enterprise must have some continuity and some differentiation of the roles within it. There must also be a common purpose of engaging in a course of conduct, although the motive for the enterprise need not be an economic one.

(citations and internal quotations omitted). Plaintiffs must plead a structured enterprise, not a "nebulous open-ended description." *Id.*

Some of the enterprises pled by plaintiffs in the present case are obvious attempts to circumvent the holding of the court of appeals in *Richmond*[2] which was confronted with a putative enterprise identified as a corporate group combined with "the car dealers with which it maintains relationships and from which it purchases retail installment contracts."[3] In that case, the Seventh Circuit upheld the district court's findings that " 'Richmond cannot meet the demands of RICO just by naming a string of entities that assertedly make up an "association in fact" ' (even though under proper circumstances such an association can indeed be an "enterprise" for RICO purposes)." 52 F.3d at 644. In turn, the Seventh Circuit held:

This complaint lists three defendants as part of "Nationwide Group," a group that "includes at least" four other entities ... and that may include other [named and unnamed] businesses. The second enterprise, Nationwide Group plus unnamed car dealers, is even less clearly identified; in fact, it does not even mention Let's Make a Deal Auto Sales, the dealership from which Ms. Richmond purchased her used car. Such a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense.

*Id.* at 645.

■■■ In the present action, the enterprises identified in plaintiffs' complaint at Count I, paragraph 58(c) and Count II, paragraph

---

2. Plaintiff's counsel in *Richmond* have also entered appearances in the present action on behalf of Ms. Brannon and Ms. Thomas.

3. More specifically, the "group" was identified as a limited partnership, its general and limited corporate partners, under common control of the Lutz family including "the Wix Auto Company, Total Financial American Life Insurance Company, Illinois Founders Insurance Company, Hercules Insurance Agency, and possibly several other companies." 52 F.3d at 642–43.

65(a), (c) [4] are not significantly distinct from those alleged in *Richmond.* For instance, in the present action, plaintiffs attempt to cure the infirmities of some of their alleged enterprises by adding "such as Bob Howard and Bob Moore." However, this misconstrues the problems identified by the Court in *Richmond.* In the enterprise alleged in Count II, paragraph 65(c), plaintiffs still fail to identify which dealerships other than Bob Howard and Bob Moore they believe comprise the enterprise. In addition, the description of the Bancshares group in paragraph 65(a) which makes up much of the enterprise alleged in paragraph (c) is completely uncertain. Plaintiffs merely attach Bancshares' SEC 10–Q filing and expect this Court and defendants to scour through the document to identify which of Bancshares' holdings are connected to the alleged Bancshares' "group" and identify how each subsidiary or holding is connected to the present pattern of racketeering activity. As stated above, plaintiffs have the obligation to plead each element of their RICO allegations with particularity, and also have the obligation under Fed. R.Civ.P. 8(a) to give defendants fair notice of their allegations. At least regarding the enterprises identified in paragraph 58(c) and paragraph 65(a) and (c) plaintiffs have failed to allege enterprises that meet these standards under the Federal Rules of Civil Procedure, nor have plaintiffs identified a structure to these putative enterprises sufficient to satisfy RICO.

The Court also finds that the putative enterprise in paragraph 65(b) of plaintiffs' complaint fails for the reasons cited immediately above. By merely identifying "other subsidiaries … that purchase retail installment contracts" plaintiffs have failed to identify which of Bancshares' holdings might qualify as subsidiaries, and have also broadened the scope of this enterprise beyond that alleged by plaintiffs. Instead of alleging sub-

sidiaries that have forced placed insurance or even subsidiaries that purchase retail installment contracts from car dealers, plaintiffs aver that any subsidiary of Bancshares, regardless of geography, acquisition date, or field of business is a part of the enterprise if it purchased retail installment contracts. This asserted enterprise is far less structured or identified by plaintiffs than even those in *Richmond.* In *Richmond,* the district court complained that plaintiffs had merely "strung together" "entities" and attempted to call them enterprises. *Richmond v. Nationwide Cassel L.P.,* 847 F.Supp. 88, 91–93 (N.D.Ill.1994). In the present action, plaintiffs have chosen to avoid even naming many of the entities that combine to form the enterprises in paragraph 58(c) and paragraph 65(a), (b) and (c).

An additional indicator of whether a proposed enterprise has sufficient structure is whether it is an "ongoing organization. with a decision-making framework or mechanism for controlling the group." *Sanders,* 928 F.2d at 943 (citing *Riccobene,* 709 F.2d at 222). Plaintiffs' alleged enterprises at paragraph 58(c) and paragraph 65(c) also fail to overcome this requirement. In paragraph 58(c) plaintiffs allege only the parties involved in the assignment of the retail installment contracts. There is nothing in plaintiffs' allegations that would create a relationship between these parties beyond the acts of racketeering alleged. Although plaintiffs do contend that most of the forms used to complete the contracts were created by Boatmen's, certainly this is not sufficient to identify a "decision-making framework or mechanism for controlling the group." In fact, there is nothing in plaintiffs' complaint alleging that there was any system for coordinating the activities of the dealers and Boatmen's. Likewise, the averred relationship was not ongoing or bound by any al-

---

**4.** The enterprise identified in Count I, paragraph 58(c) is the "combination of Boatmen's and the automobile dealers with which it had long-term relationships defined by written contracts, such as Bob Howard and Bob Moore." The enterprise identified in Count II, paragraph 65(a) is identified as the "corporate group headed by Boatmen's Bancshares Inc., and described above." The enterprise identified in Count II, paragraph 65(c) is the "combination of [the corporate group headed by Bancshares, Boatmen's and the other subsidiaries of Bancshares that purchase retail installment contracts,] and the automobile dealers with which they or any of them had long-term relationships defined by written contracts, such as Bob Howard and Bob Moore."

leged informal or formal agreement that could be described as continuity. It was, as pled by plaintiffs, an *ad hoc* relationship for the assignment of groups of retail installment contracts at different times.

Notwithstanding this lack of structure identified in paragraph 58(c), plaintiffs advance an almost identical enterprise in paragraph 65(c) except instead of including merely Boatmen's and the auto dealers, plaintiffs identify the Bancshares "group" and the auto dealers.[5] However, regardless of the number of entities associated with Boatmen's that plaintiffs aver, they do not cure the failings just identified regarding paragraph 58(c)— the identification of a structured, continuing relationship between those accused of force placing the insurance (be it Boatmen's, Bancshares, or the Bancshares "group") and the auto dealers. These additional considerations also support the Court's conclusion that plaintiffs have not properly pled an enterprise in paragraph 58(c) or paragraph 65(c) of the complaint.

### *"Separateness"*

■ For plaintiffs to plead a proper enterprise, they must identify an enterprise that is distinct from the "person" or defendant charged with the RICO violation. *Board of County Comm'rs v. Liberty Group,* 965 F.2d 879, 884 (10th Cir.1992); *Garbade v. Great Divide Mining and Milling Corp.,* 831 F.2d 212, 213 (10th Cir.1987); *Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. Partnership,* 817 F.Supp. 899 (D.Kan.1993). This "separateness" test derives from the mandate of section 1962(c) that a person be "employed by or associated with any enterprise." All but one of the courts of appeals that have considered the question have concluded that this language mandates that the person charged as a defendant under section 1962(c) be distinct from the alleged enterprise. *See Richmond,* 52 F.3d at 646 n. 11 (citing cases from the Second, Third, Fourth, Fifth, Sixth, Eighth and Ninth Circuits recognizing separateness

and one case from the Eleventh Circuit rejecting the requirement).

■ The clear corollary of this rule is that a defendant corporation identified as the person cannot also be the enterprise. *See Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1063 (2d Cir.1996); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 268 (3d Cir.1995); *Davis v. Mutual Life Ins. Co.,* 6 F.3d 367, 377 (6th Cir.1993); *Haroco v. Am. Nat'l Bank and Trust Co.,* 747 F.2d 384, 401 (7th Cir.1984), *aff'd* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). In the present action, plaintiffs contend that in Count I they only allege enterprises consisting of Bancshares and a combination of Boatmen's and the autodealers. However, plaintiffs' response disturbingly omits the stark presence of Boatmen's as an alleged enterprise at paragraph 58(b) of the complaint. Obviously, under the prevailing view in this circuit, *see Liberty Group,* 965 F.2d at 886, as well as the majority view among all circuits, Boatmen's cannot be both the enterprise and the person.

■ In Count II plaintiffs assert that corporate defendant Bancshares conducted a pattern of racketeering activities through "[t]he corporate group headed by Boatmen's Bancshares Inc., and described above." The description of Bancshares to which plaintiffs refer is located at paragraph 10 of the complaint and in the SEC 10–Q filing attached thereto. The Court can glean no distinction between the description of Bancshares and the Bancshares "group" when plaintiffs describe the two using the same definition. Although plaintiffs direct the Court's attention to cases from every circuit but the Tenth Circuit, the Court finds that the alleged Bancshares group enterprise is disposed of by the decision in *Liberty Group,* 965 F.2d at 885. In that case, the defendant identified an enterprise consisting of Liberty Group and its constituent parts. The Court of Appeals stated that "a separate enterprise is not demonstrated by the mere showing that the corporation committed a pattern of predi-

---

5. Plaintiffs actually identify the Bancshares group as identified in paragraph 65(a) and Boatmen's and the other subsidiaries in paragraph 65(b). However, because (a) encompasses (b), the Court will not address this distinction where, as here, it is of no significance.

cate acts in the conduct of its own business." *Id.* at 885. Plaintiffs here have attempted to define Bancshares and the Bancshares "group" as different entities using the same definition. Although a motion to dismiss requires the Court to consider all of plaintiffs' factual allegations as true, the Court will not indulge plaintiffs' attempts to artfully avoid pleading requirements by the use of distinctions which in fact merely constitute the tautological conclusion that Bancshares equals Bancshares. This result is especially appropriate considering the heightened pleading requirements applicable to RICO allegations. Therefore, plaintiffs' alleged enterprise in paragraph 65(a) also fails the separateness requirement.

 In Count I, paragraph 58(a), plaintiffs also allege that the defendant corporate person Boatmen's operated a pattern of racketeering activity through an enterprise identified as Bancshares. Also, in Count II, paragraph 65(b), plaintiffs allege that Bancshares was the person that conducted a pattern of racketeering through Boatmen's and other subsidiaries. These allegations raise the question of whether a corporate person can be distinct from its subsidiary corporations or its parent corporation. A number of courts have recognized that a corporation is not distinct from its subsidiaries for RICO purposes. *See Discon,* 93 F.3d at 1063–64; *Odishelidze v. Aetna Life & Casualty Co.,* 853 F.2d 21, 23–24 (1st Cir.1988); *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1411–1412 (3d Cir. 1993); *Brittingham v. Mobil Corp.,* 943 F.2d 297, 300–301 (3d Cir.1991); *NCNB Nat'l Bank v. Tiller,* 814 F.2d 931, 936 (4th Cir. 1987), *overruled on other grounds, Busby v. Crown Supply, Inc.,* 896 F.2d 833, 840–42 (4th Cir.1990) (*en banc* ); *Metcalf v. Paine-Webber Inc.,* 886 F.Supp. 503 (W.D.Pa.1995), *aff'd,* 79 F.3d 1138 (3d Cir.1996) (table).

Plaintiffs counter that these courts did not consider or did not have the opportunity to consider the holding of the court in *Jaguar Cars,* 46 F.3d at 262–68, wherein the Third Circuit held that individual officers or employees of a corporate enterprise can be liable for conducting the affairs of that corporation through a pattern of racketeering activity. In *Jaguar Cars,* the Third Circuit departed from past decisions in that circuit due to its belief that they were inconsistent with Supreme Court precedent. *Id.* (citing *National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994); *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Sedima,* 473 U.S. 479, 105 S.Ct. 3275). The court explained that its past jurisprudence was based upon the faulty opinion that "§ 1962 was intended to govern only those instances in which an innocent or passive corporation is victimized by the RICO persons, and either drained of its own money or used as a passive tool to extract money from third parties." *Id.* (citing *Petro–Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349, 1359 (3d Cir.1987)). This foundation was considered flawed by the court because of the Supreme Court's determination that Congress intended to reach both legitimate and illegitimate enterprises and that RICO is properly employed against "respected businesses allegedly engaged in a pattern of specifically identified criminal conduct." *Id.* The court's opinion concluded that section 1962(c) was intended to reach conduct by a corporate enterprise's "officers or employees who operate or manage a corporate enterprise [because] a corporation is an entity legally distinct from its officers or employees, which satisfies the enterprise definition." *Id.*[6]

However, in the only opinion from the Third Circuit interpreting the reach of the

Although the Court believes it is important to discuss the Third Circuit's decision in *Jaguar Cars,* it is not a necessity. In direct contrast to the Third Circuit's ruling, the Tenth Circuit has plainly held that "[a] legal entity ... can perform an action or make a decision only through human intermediaries, such as the individual defendants here. Courts have accordingly found that the officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from

the organization itself." *Liberty Group,* 965 F.2d at 886. Notwithstanding the fact that *Jaguar Cars* relied on some Supreme Court decisions which were handed down after *Liberty Group* was decided, the basic support for the *Jaguar Cars* decision was also found in the *Sedima* decision decided in 1985, well before *Liberty Group.* Therefore, the Court believes sufficient support for rejecting the applicability of the *Jaguar Cars* decision may be found in Tenth Circuit precedent alone.

*Jaguar Cars* decision, the district court, whose opinion was affirmed without comment, *Metcalf v. PaineWebber,* 79 F.3d 1138 (3d Cir.1996) (table), refused to extend the *Jaguar Cars* court's holding to corporate entities. *See Metcalf,* 886 F.Supp. at 514 n. 12. This Court agrees and finds compelling the holding that "there is good reason to distinguish between corporate 'persons' and individual persons in applying the" separateness test. *Id.* Most persuasive is the passage cited from *Brittingham:*

> '[I]ndividual defendants, in contrast to collective entities, are generally distinct from the enterprise through which they act. Unlike a collective entity, it is unlikely that an individual defendant by himself would constitute a valid enterprise ... But when a defendant is itself a collective entity it is more likely that the alleged enterprise is in reality no different from the association of individuals or entities that constitute the defendant or carry out its acts. Unlike individual defendants, a corporation can act only through its employees and agents.'

*Id.* (quoting *Brittingham,* 943 F.2d at 302). In addition, the court in *Brittingham* stated:

> Without additional allegations, therefore, a subsidiary corporation cannot constitute the enterprise through which a defendant parent corporation conducts a racketeering enterprise ... [C]laims will be dismissed when the enterprise and defendant, although facially distinct, are in reality no different from each other.

943 F.2d at 302–03.

Likewise, in *Richmond,* the Seventh Circuit upheld the ruling of the district court "that the complaint [must] identify an association in fact that is meaningfully different from the units that go to make it up." 52 F.3d at 646.

These precedents considered, the Court holds that plaintiffs' attempt to identify Boatmen's and other subsidiaries as enterprises distinct from the corporate defendant Bancshares fails to state a cause of action under RICO. As the Court concluded regarding the putative Bancshares' "group" enterprise, plaintiffs do not identify in their complaint how Boatmen's and the other subsidiaries, which are clearly constituent parts of Bancshares, are in reality distinct from Bancshares. The Court finds that the same result is warranted by plaintiffs' attempt to plead the inverse relationship—that Boatmen's conducted a pattern of racketeering through its parent enterprise Bancshares. Without pleading that Boatmen's and Bancshares were distinct in some manner other than their existence as separate corporate entities, the Court finds that plaintiffs' allegations that the two may support each other as enterprise and defendant are legally insufficient under prevailing authority in the Tenth Circuit as well as the majority rule among all circuits. Therefore, in addition to the Court's findings above regarding the structure of the putative enterprises, plaintiffs have not sufficiently pled enterprises in paragraph 58(a), (b) and paragraph 65(a), (b) which satisfy the separateness requirement.

### A. *Disposition*

Because plaintiffs have failed to properly plead an enterprise cognizable under the RICO statute, this Court must determine whether leave should be granted to amend the complaint or whether the RICO claim must be dismissed. Federal Rule of Civil Procedure 15(a) states that "leave [to amend] shall be freely given when justice so requires." However, the decision to grant leave to amend lies within the discretion of this Court. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Although plaintiffs have not yet been given an opportunity to amend, the Court finds that plaintiffs' complaint alleges six enterprises in two different Counts. *See Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262, 1274 (10th Cir.1989). There is no indication that further bites at the apple would cure its taint. Therefore, plaintiffs' RICO complaint should be dismissed with prejudice.

However, plaintiffs' state law claims against Bancshares, Boatmen's and T.B.A. still remain. As the RICO claim is no longer before the Court and it was the sole basis for this Court's original jurisdiction, the Court will decline to exercise jurisdiction of the remaining claims and dismiss those without prejudice to refiling in state court pursuant to 28 U.S.C. § 1367(c). Accordingly, the

Court finds it unnecessary to address the remaining contentions in the RICO defendants' motion to dismiss or the motion to dismiss of defendant T.B.A.

### III. *Conclusion*

To survive the RICO defendants' motion to dismiss, plaintiffs were required to plead an enterprise with structure and that was distinct from the corporate "person" identified in Counts I and II. As determined above, plaintiffs have failed to identify enterprises with the requisite structure in paragraph 58(c) and paragraph 65(a), (b) and (c). Plaintiffs have also failed to fulfill the separateness requirement with regard to the alleged enterprises in paragraph 58(a) and paragraph 65(a), (b).

The foregoing considered, Counts I and II of plaintiffs' complaint are dismissed with prejudice. Pursuant to 28 U.S.C. § 1367(c) the remaining counts are dismissed without prejudice to refiling in state court.