**Samuel DEANE and Teresa Deane, for themselves and on behalf of a class of others similarly situated, Plaintiffs,**

v.

**WEYERHAEUSER MORTGAGE COMPANY and John Does 1–5, Defendants.**

**Civil Action No. 96–11515–EFH.**

United States District Court, D. Massachusetts.

June 24, 1997.

---

Daniel A. Edelman, Edelman & Combs, Chicago, IL, Edward K. O'Brien, O'Brien Law Firm, Nashua, NH, for Plaintiffs.

Robert D. Cultice, Goldstein & Manello, P.C., Boston, MA, David J. Butler, Tacie H. Yoon, Swidler & Berlin, Washington, DC, for Weyerhaeuser Mortg. Co.

### MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This case is before this Court on a rehearing of the Defendants' Motion to Dismiss the Plaintiffs' Complaint. The Plaintiffs, Samuel and Teresa Deane, have brought this case, pursuant to Title 18 U.S.C. § 1962(c), against the Defendants, Weyerhaeuser Mortgage Company (WMC), and "John Does 1–5," whom the plaintiffs allege are WMC officers, because WMC added $75.00 to their mortgage balance. After a previous hearing this Court concluded that Count II of the Plaintiffs' Amended Complaint against WMC violated Title 18 U.S.C. § 1962(c) by including WMC as both the Racketeer Influenced and Corrupt Organizations Act (RICO) person and enterprise. This Court dismissed Count II because of this error, but allowed the plaintiffs thirty days in which to replead. The plaintiffs complied in the form of a Second Amended Class Action Complaint (Second Amended Complaint). The defendants responded by filing a "Supplemental Reply Brief in Support of Motion to Dismiss." This Court then heard oral arguments directed at the plaintiffs' changes in their Second Amended Complaint. The thrust of the defendants' argument is that, notwithstanding the fact that the plaintiffs' Second Amended Complaint alleges WMC as a defendant only, it cannot be distinguished from its corporate parents, which are still alleged to be enter-

prises. The plaintiffs' counter argument is that a subsidiary may be distinct from its parents if it is assigned a discrete function that no one else in the corporate structure performs, and if that function is violative of RICO. Based upon the arguments, and all the materials filed by both parties, this Court concludes again that the plaintiffs' Second Amended Complaint has not satisfied the distinctiveness requirement of Section 1962(c), and dismisses Count II against WMC with prejudice.

Some review is necessary. This Court's original decision to dismiss Count II was contained in its Memorandum and Order of April 16, 1997. In that Memorandum and Order this Court made the following findings: "The plaintiffs' factual allegations, in essence, are that they gave a mortgage to Mortgage Network, Inc.; their mortgage was sold twice on the secondary mortgage market; Defendant WMC was their mortgage's second buyer; Defendant WMC serviced their mortgage for about a year, at which time the plaintiffs decided to sell their home and buy another; and this sale caused their mortgage to be paid-off early."

"The buyers of the plaintiffs' home planned to give a mortgage to Wakefield Savings Bank. However, before it accepted the buyers' mortgage, Wakefield Savings Bank required a statement from Defendant WMC showing the plaintiffs' mortgage balance. Defendant WMC sent such a statement to Wakefield Savings Bank's agent, adding to the balance $60.00 for quoting the balance and $15.00 for sending the quote by facsimile. When the plaintiffs paid-off their mortgage to Defendant WMC, they paid the $75.00 fees quoted in the facsimile."

"The plaintiffs allege that they did not know that $75.00 had been added to their mortgage balance. Their amended complaint further alleges that the $75.00 is tantamount to an early payoff charge—a charge that is prohibited by the terms of their mortgage. Finally, they allege that Defendant WMC had a practice of imposing these fees, and that its practice constituted a pattern of unlawful activity sufficient to sustain a RICO count under 18 U.S.C. § 1962(c)."

Section 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." A necessary component of a Section 1962(c) count is the naming of a proper RICO enterprise. 18 U.S.C. § 1961(4). The plaintiffs' Second Amended Complaint tries to satisfy this requirement in Paragraph 89, as to the Defendant WMC:

"Each of the following is an 'enterprise' as defined in 18 U.S.C. § 1961(4), the affairs of which affect interstate commerce:

"a. WC.[1]

"b. WFS.[2]

"c. WC and WFS.

"d. The corporate group which is headed by WC, which includes WFS, and numerous other corporations (but which excludes WMC).

"e. The beneficial owners, individually and collectively, of the mortgages which WMC services.

"f. WC and the beneficial owners, individually and collectively, of the mortgages which WMC services.

"g. WFS and the beneficial owners, individually and collectively, of the mortgages which WMC services.

"h. WC, WFS and the beneficial owners, individually and collectively, of the mortgages which WMC services."[3]

1. Weyerhaeuser Company.

2. Weyerhaeuser Financial Services Company, a subsidiary of WC and parent of WMC.

3. In the plaintiffs' Amended Complaint paragraph 89 had been pleaded as follows:

"Each of the following is an 'enterprise' as defined in 18 U.S.C. § 1961(4), the affairs of which affect interstate commerce:
"a. WC.
"b. WFS.
"c. WC and WFS.
"d. WC and WMC.
"e. WC, WFS and WMC.

The plaintiffs also allege that "WMC's origination and servicing [of mortgages] business is instrumental to the financial enterprises of WC and WFS.... " ¶ 91b. The plaintiffs allege that WC and WFS put WMC in the position of originating and servicing mortgages. ¶ 91c. The defendants' quote fees generated millions of dollars in ill-gotten gains. ¶ 11. This money enhanced all the businesses in the WC corporate group, ¶ 27, because it was sent upstream, first to WFS, then to WC, ¶ 32. WC "benefitted" from this money; and the fees even appeared in WC's financial statements. ¶ 33. Elsewhere, the plaintiffs conclude, "WC benefitted from the unlawful activities complained of herein." ¶ 37.

A district court may not dismiss a complaint unless, " 'according to the facts alleged, ... the plaintiff cannot recover on any viable theory.' " *Garita Hotel Ltd. v. Ponce Federal Bank,* 958 F.2d 15, 17 (1st Cir.1992) (quoting *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990)). In evaluating a complaint a district court must treat the allegations as true, and resolve all reasonable inferences in the plaintiffs' favor. *Kiely v. Raytheon Co.,* 105 F.3d 734, 735 (1st Cir.1997). Thus, dismissal is proper only after such inferences have been indulged, and it still appears that no theory will support the plaintiffs' allegations. *See Vartanian v. Monsanto Co.,* 14 F.3d 697, 700 (1st Cir.1994). For the purposes of this motion, this Court considered only those allegations contained in the plaintiffs' Second Amended Complaint. *See Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996).

█ As was noted above, the defendants argue that the changes the plaintiffs made to Count II in the Second Amended Complaint do not cure the complaint's infirmity: WC, WFS and WMC are not distinct entities for Section 1962(c) purposes. Under Section 1962(c) the RICO "enterprise," cannot be the same entity as the RICO "person," or defendant. *Miranda v. Ponce Federal Bank,* 948 F.2d 41, 44–45 (1st Cir.1991). This is because Section 1962(c) seeks to punish the culpable person who misuses the enterprise. *Schofield v. First Commodity Corp. of Boston,* 793 F.2d 28, 30–31 (1st Cir.1986) (noting that a culpable enterprise may be held liable under 18 U.S.C. § 1962(a)). While a corporation and it subsidiaries may be an enterprise, the person committing the illegal acts must be an entity distinct from the enterprise. *General Electric Co. v. Lyon,* 894 F.Supp. 544, 553 (D.Mass.1995) ("The unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it."). *Rodriguez v. Banco Central,* 777 F.Supp. 1043, 1054 (D.Puerto Rico 1991), *aff'd,* 990 F.2d 7 (1st Cir.1993), stated as follows:

> Under 1962(c), the enterprise and the "person" who violates the statute must be distinct from each other, the former being exempt from liability, the latter being the targeted defendant.... Where the plaintiffs have suffered harm at the hands of an enterprise that consists only of a single corporation and its employees, subsidiaries or agents, the plaintiffs *"must choose* between the corporation and its constituents as persons liable." *Langley,* 738 F.Supp. at 1241. If the plaintiff chooses to identify the corporation as the enterprise through which its employees, as persons, conducted the RICO activity, the corporation is *insulated from liability. Id.* [Emphasis supplied].

█ At oral argument both parties cited non-First Circuit cases as authority for their respective positions. The defendants cited *Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055 (2d Cir.1996), *petition for cert. filed,* 65 U.S.L.W. 3694 (U.S. Apr. 3, 1997) (No. 96–1570); 65 U.S.L.W. 3767 (U.S. May 5, 1997) (No. 96–1785). The court in *Discon* held that a subsidiary is not distinct from its parent for RICO purposes. *Id.* at 1064. Conversely, the plaintiffs cited *Haroco v. American National Bank and Trust Co. of Chicago,* 747 F.2d 384 (7th Cir.1984), · *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). The court in *Haroco* held that a subsidiary is "a legal entity distinct from its parent," and therefore satisfies

"f. The corporate group which is headed by WC, which includes WFS, WMC and numerous other corporations.

"g. WMC and the beneficial owners, individually and collectively, of the mortgages which WMC services."

the RICO distinctiveness requirement. *Id.* at 402. This Court is not persuaded by either case. The rule of the First Circuit is not as rigid as the contrary holdings of these two cases. Rather than looking at a corporation's structure, the First Circuit requires judges to examine a complaint and determine whether the parent and its subsidiary's activities were distinct when the RICO violations allegedly occurred.

The defendants have cited *Compagnie De Reassurance v. New England Reinsurance*, 57 F.3d 56 (1st Cir.1995), as the First Circuit case which is "the closest" to their position. This Court is familiar with that case. *See* 825 F.Supp. 370 (1993). In *Compagnie* the three named defendants, or persons, were all subsidiaries of the Hartford Group of Insurance Companies. Two of the defendants had no employees. Their business was conducted by the third defendant's employees. The named enterprise began as an unincorporated division of the third defendant, then became its wholly-owned subsidiary. *Compagnie, supra* at 61–62. Based upon these facts the Court of Appeals held that this Court "was clearly entitled" to find that there was no distinction between the three defendants and the enterprise. *Id.* at 92.

During oral argument the defendants stated that *Compagnie* was representative of First Circuit law, and is consistent with their position that a Section 1962(c) count must be dismissed if the enterprise and the person are the same. In support of their position defendants passed to the court the case of *Brannon v. Boatmen's Bancshares, Inc.*, 952 F.Supp. 1478 (W.D.Okl.1997). In *Brannon* the court observed, "a number of courts have recognized that a corporation is not distinct from its subsidiaries for [Section 1962(c)] purposes. *See . . . Odishelidze v. Aetna Life & Casualty Co.*, 853 F.2d 21, 23–24 (1st Cir.1988)." *Id.* at 1486.

This Court does not think the *Brannon* court's statement is a fair reading of First Circuit law. In *Odishelidze* the plaintiff brought a RICO claim under Section 1962(c), naming Aetna Life & Casualty Company and its subsidiaries as the defendant. 853 F.2d at 21. The plaintiff also named Aetna Life & Casualty Company and its subsidiaries as the

enterprise. *Id.* at 23–24. The *Odishelidze* Court dismissed the RICO count because, *under the facts alleged,* the person and the enterprise were exactly the same, not because Aetna was per se non-distinct from its subsidiaries. *Id.* at 24. Indeed, a survey of the First Circuit cases that cite *Odishelidze* do so merely as support for the proposition that the person and the enterprise must be distinct entities. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996); *Libertad v. Welch*, 53 F.3d 428, 442 (1st Cir.1995); *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 45 (1st Cir.1991); *Arzuaga–Collazo v. Oriental Federal Savings Bank*, 913 F.2d 5, 6 (1st Cir.1990). Moreover, the language of *Compagnie*, and the case it relied upon, *Brittingham v. Mobil Corp.*, 943 F.2d 297 (3d Cir. 1991), indicate that the First Circuit rule is otherwise. The holding of *Brittingham* is that it "is still theoretically possible for a parent corporation to be the defendant and its subsidiary to be the enterprise under Section 1962(c)." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1412 (3d Cir.1993). *Compagnie*'s language is consistent. In that case this Court "was clearly entitled" to find that a subsidiary was not an entity distinct from its parent, but was not required to do so. 57 F.3d at 92. Corporate structure, therefore, is not the lynchpin of distinctiveness. Rather, the First Circuit looks to the complaint's allegations to see whether the parent's activities are distinct from those of the subsidiary at the time the RICO-violative activity occurred.

As alleged in the Second Amended Complaint, the subsidiary-parent relationship between WMC, WFS and WC shows that there is an integrated operational relationship between the three entities. In that relationship WMC's activities are not distinct from WC and WFS. Far from being victims, WC and WFS created WMC for the purpose of originating and servicing mortgages. WMC's mortgage business generates significant revenues that are transferred to WFS and WC, and appear in WC's financial statements. WC then used the money to benefit all the WC businesses, including WMC. When the enterprise benefits from the person's unlawful activities neither is distinct for

Section 1962(c) purposes. *Schofield v. First Commodity Corp. of Boston,* 793 F.2d at 31.

Because the plaintiffs' pleadings violate the distinctiveness requirement, Count II of the Second Amended Complaint has the same error that it did in the Amended Complaint: the same entity is alleged to be both the person and the enterprise. As this Court stated in its prior Memorandum and Order, it is unwilling to speculate whether the plaintiffs desire WMC to be the enterprise along with the other members of the WC corporate group, or whether they desire that the WC corporate group, including WMC, to be the persons only. *See Rhodes v. Consumers' Buyline, Inc.,* 868 F.Supp. 368, 376–377 (D.Mass.1993). Count II, therefore, is dismissed with prejudice. Count III, the other RICO count which names the individual officers as the persons only, survives the Motion to Dismiss.[4]

**SO ORDERED.**

---

**4.** Counts I and IV are state law claims. The RICO statute, when enacted, did not contemplate attorney-driven suits such as this and the RICO statute is utilized here merely as a device to obtain federal jurisdiction for what is essentially a contract action which would otherwise be litigated in the state Small Claims Court.