**In re James Bryan BOWLING and Linda Lou Bowling, Debtors.**

**Bankruptcy No. IP87–1165 V.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

June 7, 1990.

William F. Thompson, Indianapolis, Ind., for Fidelity.

Mary Donahoe, UAW Legal Services Plan, Indianapolis, Ind., for debtors.

## ORDER GRANTING DEBTORS' MOTION FOR SANCTIONS

RICHARD W. VANDIVIER, Bankruptcy Judge.

This matter comes before the Court on the Motion for expedited reopening of Bankruptcy Proceeding and for Sanctions ("the Motion for Sanctions") filed by the Debtor on March 31, 1989. The bankruptcy case was reopened by order dated July 18, 1989, and the issue of sanctions was heard on August 15, 1989, and August 29, 1989. The Court now grants the Motion for Sanctions, to the extent set forth below, on the following findings of fact and conclusions of law.

### Findings of Fact

1. The Debtors filed for relief under Chapter 7 of the Bankruptcy Code on February 27, 1987, and received a discharge on August 12, 1987. Among the discharged debts was a debt of $1377.79 to Fidelity Financial Services, Inc. ("Fidelity"). The debtors did not enter into a reaffirmation agreement with Fidelity before discharge.

2. According to testimony of Mr. Bowling, in December, 1987, the Debtors went to Fidelity to request a loan after receiving a letter from Fidelity inviting them to come in and talk about a new loan. Fidelity informed them that it had a policy of not lending to bankruptcy debtors unless they repaid their discharged debts to Fidelity, and if the Debtors repaid the discharged debt, they could re-establish their good credit. The Debtors therefore agreed to repay $1200.00 of the discharged debt in exchange for a new loan of $756.60, which they wanted to use for Christmas presents for their four children.

3. Ms. Charlene McLane ("McLane"), a branch manager of Fidelity, had a somewhat different recollection of this transaction. She testified that Mrs. Bowling called her indicating a desire to repay the discharged debt in order to re-establish the Debtors' credit. McLane said that they could do that. Later, when Mrs. Bowling called to see if their application had been approved, she asked if they could receive some additional money for Christmas, and McLane agreed to process an application for new money. No one at Fidelity told the Debtors that repayment of the discharged debt was a precondition to getting a loan for new money. Fidelity would have loaned the new money if the Debtors qualified for the loan even if they did not pay the old loan. People who have discharged loans in bankruptcy are treated no differently than other customers.

4. The Court finds Mr. Bowling's testimony about the events leading up to the loan to be more credible than McLane's. Fidelity's own pleadings in this case indicate that it is its policy not to loan new money to bankruptcy debtors unless they repay the debt they discharged. It is not credible that the Debtors wanted to re-establish their credit with Fidelity unless their purpose was to borrow new money, that Fidelity would have to process an "application" for voluntary repayment of a discharged debt, or that Mrs. Bowling called to see if the application had been "approved". Regardless of who first contacted the other, the Court finds that Fidelity told the Debtors that to get a loan for new money, and to re-establish good credit, they would have to repay the discharged debt.

5. On December 15, 1987, the Debtors signed a promissory note for $1956.60 to be paid on the Debtors' behalf, plus approximately $200.00 in other charges, at 29.02 percent interest ("the Note"). Fidelity gave the Debtors one check $756.60, and another for $1200.00, payable to Mr. Bowling and Fidelity, which Mr. Bowling promptly endorsed and returned to Fideli-

ty. A notation on the $1200.00 check read "PAY ON BK ACCOUNT REAFFIRM JAMES & LINDA BOWLING".

6. According to Mr. Bowling, after signing the Note, Fidelity often contacted the Debtors even before payments were due to ask if they would be on time. On one occasion, when Mr. Bowling called Fidelity to inform them that one payment would be about $28.00 short, an employee told him that they would see him in court if payment were short or late. The Debtors' financial problems after Mr. Bowling broke his arm and ankle caused them to default on the Note.

7. McLane testified that the Debtors were late with the second payment and were in default from that time forward. The Court concludes that the variances in testimony on this point need not be resolved because they are immaterial to the outcome of this action. The Court notes that Fidelity's pleadings in this case and the state court case indicate that the Debtors paid more than $700.00 on the Note.

8. On January 25, 1989, Fidelity filed suit on the note in Marion County Municipal Court, Cause No. 49F02–8901–CP–162, seeking $2053.58 principal and interest accruing at $1.65 per day. On or about March 10, 1989, Fidelity moved for summary judgment on the full amount of its claim, supported by affidavits.

9. In testimony which the Court finds credible, Mr. Bowling said that in phone conversations, an employee of Fidelity told Mr. Bowling that Fidelity would drop the state court action if the Debtors made payments on the debt. The Debtors therefore made payments of $60.00 each on January 30, 1989, and on February 1, 1989, but Fidelity did not drop the suit.

10. In their Motion for Sanctions, filed in this Court on March 31, 1989, the Debtors sought a stay of the state court proceedings, a determination that the state court action is an attempt to enforce a discharged debt, and sanctions against Fidelity for contempt, including actual damages, reasonable attorney fees, punitive damages, and costs.

11. After the Debtors filed their Motion for Sanctions in the case, Fidelity submitted an amended affidavit in support of its motion for summary judgment, in which a representative of Fidelity stated that $1200.00 of the principal represented a debt discharged in bankruptcy that the Debtors had voluntarily agreed to repay, that the Debtors had withdrawn their consent by their pleadings in state court and the bankruptcy court, and that Fidelity therefore elected to treat the Note as a loan for $957.35, of which $275.55 remained unpaid as of February 1, 1989. On April 26, 1989, Fidelity responded to the Debtors' Motion for Sanctions in this Court by reporting that it had reduced its claim to $275.55 and that the Debtors had therefore received all the relief to which they were entitled.

12. On May 5, 1990, the state court entered summary judgment to favor of Fidelity in the amount of $275.55 plus interest as 21 cents per day. The Debtors filed a motion to amend their counterclaim, which was heard on June 23, 1989. On June 26, 1989, the state court granted the motion to amend the counterclaim and sua sponte set aside the previously entered summary judgment.

13. In spite of Fidelity's dropping its claim for the discharged debt, Fidelity sent a billing statement to the Debtors on June 27, 1989, for $3671.04.

14. On July 11, 1989, Fidelity filed in state court an affidavit to withdraw the amended affidavit, stating that its election to treat the Note as a loan for $957.35 was made in an effort to resolve the controversy, but since the Debtors were granted leave to file a counterclaim, Fidelity was withdrawing its election and would pursue collection of the entire amount of the debt. On the same day, Fidelity filed with this Court a notice of this action.

15. On July 18, 1989, the Court heard the motion to reopen the case and granted the motion. At the hearing, this Court indicated to counsel for Fidelity that no reaffirmation agreement is enforceable unless made in compliance with 11 U.S.C. section 524(c) and (d). Counsel informed the Court of its client's position that the

Note was a voluntary repayment under section 524(f).

16. On July 28, 1989, Fidelity sent the Debtors a billing statement for $4275.04.

17. McLane testified that billing statements are computer generated monthly by a central office in Des Moines, Iowa, that Fidelity's practice was to stop the bills after a suit was brought only after judgment is entered, that she had ordered the statements stopped when summary judgment was entered, but after it was set aside they were started again, that the amounts of the June 27, 1989, and July 28, 1989, statements included attorney fees, which Fidelity's accounting policies required to be added to the bills.

18. In its brief of August 4, 1989, and at the hearing of August 15, 1989, Fidelity contended that the Debtors voluntarily agreed to pay the discharged debt, as allowed by 11 U.S.C. section 524(f), that the Debtors had withdrawn its consent to pay the discharged debt after the state court action was brought, that on August 3, 1989, Fidelity had filed a notice in state court withdrawing its affidavit to withdraw amended affidavit in state court (putting Fidelity back in the position of having waived enforcement of $1200.00 of the Note) and that the order reopening this case should therefore be vacated.

19. The Debtors contend that the Note, to the extent it covers $1200.00 of previously discharged debt, is an unenforceable reaffirmation agreement and Fidelity's attempt to collect this amount is in violation of the permanent injunction of 11 U.S.C. section 524(a).

20. The Debtors submitted evidence that their attorney spent 54 hours, valued at $90.00 per hour, on this matter from February 3, 1989, through July 25, 1989, contending that a reasonable attorney fee is $4860.00. A bankruptcy attorney was qualified by the Court as an expert and testified that the hours and hourly rates were reasonable for the services necessitated by Fidelity's actions, but conceded that nearly $5000.00 in attorney fees in defending a $275.00 claim would not be justified from a business standpoint. The Court finds the quality of the legal services provided by the Debtors' attorney to be good.

21. At the conclusion of the hearing on August 29, 1989, the Court instructed the parties that Fidelity would be allowed to go to trial in the state court action on the claim for the new money, but would be enjoined from taking any further action without order from this Court.

22. After the hearing, the Debtors attempted to supplement the record with a report of subsequent collection activities and the state court's decision in the state action. Fidelity objected. Because Fidelity did not have the opportunity to respond to the Debtors' evidence of the post-hearing collection activities, the Court will not consider these items. However, Fidelity makes no assertion that the report of the state court decision is not accurate, and since it is a proper subject of judicial notice and will aid the Court in determining the scope of its order, the Court will consider it.

23. According to state court's entry of September 8, 1989, the original of which was provided by the Debtors, the state court found for Fidelity on its complaint in the amount of $320.49 and found for the Debtors on their counterclaim in the same amount. Each party was to bear its own costs.

*Conclusions of Law*

1. An agreement between debtor in bankruptcy and a creditor by which the debtor reaffirms his or her debt to the creditor is binding only if made in compliance with 11 U.S.C. section 524(c) and (d), which requires among other things that the agreement be made prior to the debtor's discharge on a representation or determination that reaffirmation does not impose an undue hardship on the debtor, that the court inform the debtor at a hearing that such an agreement is not required by law and of the legal effect of the agreement, and that the agreement state clearly that the debtor may rescind the agreement any time before discharge or within 60 days of the filing of the agreement with the court,

whichever is later. Those provisions are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts. However, nothing in section 524(c) or (d) prevents a debtor from voluntarily repaying any debt. 11 U.S.C. section 524(f).

The payment of the $1200.00 in the loan transaction of December 15, 1987, was not a voluntary repayment of the type allowed by 11 U.S.C. section 524(f). The $1200.00 check from Fidelity endorsed by Mr. Bowling back to Fidelity did not represent funds over which the Debtors had any discretionary control. Indeed, Fidelity was a copayee of the check. After the transaction was complete, Fidelity did not have $1200.00 from the Debtors, but rather a Note embodying their promise to pay $1200.00. In other words, the Debtors reaffirmed the discharged debt. Despite Fidelity's witnesses dancing around the reality of the transaction by describing it as "renewing" or "rewriting" the loan, the truth is found on the notation of the $1200.00 check—the transaction was to "REAFFIRM" the discharged debt.

3. This was not, as McLane seems to believe, analogous to a debtor borrowing money from a relative to voluntarily repay a discharged debt. In that case, the debtor would deliver cash to Fidelity and would leave owing nothing to Fidelity on account of the discharged debt. No transaction that leaves a debtor obligated to pay, or believing that he or she is obligated to pay any part of a discharged debt can be characterized as voluntary repayment within the meaning of section 524(f).

4. Because the Debtors' reaffirmation of their discharged debt did not comply with 11 U.S.C. section 524(c) and (d), the Note is legally unenforceable to the extent of the $1200.00 in discharged debt. *See In re Smurzynski*, 72 B.R. 368, 370 (Bankr.N. D.Ill.1987). The fact that Fidelity did not coerce or pressure the Debtors into reaffirming the debt makes no difference; no reaffirmation is enforceable unless it is made in compliance with sections 524(c) and (d). *See In re Gardner*, 57 B.R. 609, 611 (Bankr. D. Maine

5. Although Fidelity was within its rights to refuse to do business with the Debtors unless they voluntarily repaid the discharged debt, *see* 11 U.S.C. section 525 (such discrimination not prohibited); *In re Brown*, 49 B.R. 558, 560–61 (Bankr.M.D. Pa.1985), Fidelity cannot convert this right into the ability to extract a post-discharge reaffirmation agreement that does not comply with the protections of 11 U.S.C. section 524(c) and (d). In this transaction, the Debtors agreed to a debt of over $2000.00 at over 29 percent interest in order to receive a loan of about $750.00. The substantive and procedural requirements of section 524(c) are intended to protect debtors from unwisely agreeing to just this kind of deal without full advice on their rights and awareness of the consequences. *See Smurzynski*, 72 B.R. at 370.

6. A discharge operates as a permanent injunction against any act to collect any discharged debt as a personal liability of the debtor. 11 U.S.C. section 524(a). To the extent the state court action was an attempt to collect the discharged debt from the Debtors, it was a violation of the permanent injunction and of the Debtors' rights protected by the injunction.

7. Under 11 U.S.C. section 105, this Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. A debtor's discharge and the protection of the permanent injunction are the most important components of the fresh start provided by the Bankruptcy Code. *See In re Barbour*, 77 B.R. 530, 531 (Bankr.E.D.N.C.1987). Proceedings to prosecute a violation of the permanent injunction is within this Court's core jurisdiction. *See id.* at 532.

8. Sanctions for contempt are not appropriate for technical and unintended violations of a debtor's rights. *See Brown*, 49 B.R. at 561. However, Fidelity's actions were by no means technical, but go to the very heart of the Debtors' fresh start, which the permanent injunction and the requirements for valid reaffirmation are intended to protect. The Debtors have

presented ample evidence that Fidelity's collection actions were intentional. Yet because those actions had some colorable legal support, the Court does not believe that Fidelity's actions to be contemptuous or to warrant an award of punitive damages to the Debtors.

9. Though Fidelity's actions do not quite rise to the level of contempt, the Court concludes that it is within its equitable powers under section 105 to award actual damages, reasonable attorney fees and costs to debtors forced to defend actions brought against them in violation of the permanent injunction.

10. Because the Debtors proved no actual damages, none can be awarded.

11. Costs of this proceeding will be taxed against Fidelity.

12. The Court agrees with Fidelity that $5000.00 in attorney fees for defending a $275.00 claim would be excessive, but notes that Fidelity did not finally abandon its claim for the discharged debt until August, 1989, after the Debtor's attorney had responded to the state court complaint, defended Fidelity's motion for summary judgment, reopened this bankruptcy, filed the motion for sanctions, and attended several hearings in both actions. The state court action was for $2053.58, of which only $275.55 was proper, the difference being $1778.03. This was the amount in dispute until August, 1989. Attorney fees of $5000.00 would still be out of proportion to this amount. The Court finds in considering the amount in dispute, the actions necessary to protect the Debtors' rights, the time expended and the quality of legal work, that an appropriate attorney fee award is $1200.00.

13. Fidelity now is on unmistakable notice that any loan agreement is totally unenforceable to the extent that it incorporates a discharged debt and that coercive action of any kind to collect such a debt is in violation of the permanent discharge injunction. If Fidelity continues the questionable practice of including "voluntary" promises to pay discharged debts with loans of new money, it must ensure that its policies and procedures, from its loan applications to its computer generated billing statements to its litigation tactics, are such that every former bankruptcy debtor is clearly informed that any agreement to pay a previously discharged debt cannot be enforced but is and always will be totally voluntary. Fidelity must ensure that in fact no coercive action is ever taken to enforce such an agreement, including the issuance of any bill including a previously discharged debt without clear instructions that payment is voluntary to the extent of the discharged debt. Any legal action to collect the discharged debt by its nature is coercive and would be violative of the permanent injunction.

14. The Court believes that it is within its equitable powers under 11 U.S.C. section 105 to enjoin a creditor from continuing practices that have violated the rights of a debtor who is before this Court. The Court will refrain from enjoining any particular practice of Fidelity at this time, but will exercise its power to ensure the effectiveness of its discharge orders by ordering Fidelity to distribute a copy of this order and the judgment on this order to each of the managers of its branches or offices located in the Southern District of Indiana so they can take the steps necessary to avoid violating the rights of former bankruptcy debtors.

Judgment on the Motion for Sanctions will be entered separately.