230 F.3d 439 (1st Cir. 2000)
 CHERYL BESSETTE, FOR HERSELF AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFF, APPELLANT,
v.
AVCO FINANCIAL SERVICES, INC.; AVCO FINANCIAL SERVICES OF RHODE ISLAND, INC.; AVCO FINANCIAL SERVICES OF COLORADO, INC.; AVCO FINANCIAL SERVICES MANAGEMENT CO., DEFENDANTS, APPELLEES.
United States Court of Appeals For the First Circuit
 No. 99-2291
 Heard June 8, 2000
Decided October 27, 2000
As amended December 15, 2000.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge][Copyrighted Material Omitted]
 Cathleen M. Combs, with whom Daniel A. Edelman, Tara L. Goodwin, Edelman, Combs & Latturner, Christopher M. Lefebvre and Law Offices of Claude Lefebvre & Sons were on brief, for appellant.
 Gary Klein, John Rao and National Consumer Law Center on brief, for National Association of Consumer Bankruptcy Attorneys, amicus curiae.
 Patricia A. Sullivan, with whom William P. Robinson III, Jon M. Anderson, Edwards & Angell, Llp, Mary Grace Diehl, A. William Loeffler and Troutman Sanders Llp were on brief, for appellees.
 Robert E. McKew, George J. Wallace, Timi Nickerson Kenealy and Eckert Seamans Cherin & Mellott, Llc on brief, for American Financial Services Association, amicus curiae.
 Michael E. Malamut on brief, for New England Legal Foundation, amicus curiae.
 Before Torruella, Chief Judge, Campbell, Senior Circuit Judge, and Schwarzer,* Senior District Judge.
 Torruella, Chief Judge.
 
 
 1
 This appeal involves the wrongful, and supposedly common, practice by certain creditors of coercing naive and inexperienced debtors into reaffirming debt that has been properly discharged in bankruptcy. Such a practice contravenes one of the primary purposes of federal bankruptcy law, that is, to "give the debtor a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" Lines v. Frederick, 400 U.S. 18, 19 (1971) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244-45 (1934)). Nationwide, debtors have sought relief from both the federal bankruptcy courts and district courts attempting to put an end to this practice. The latest strategy for reform is to seek certification of a class of debtors against repeat offenders of the Bankruptcy Code - that is, creditors who as a matter of business practice procure improper reaffirmation agreements.
 
 
 2
 This action brings the trend to the attention of the First Circuit. Specifically at issue in this case is the alleged misconduct of the appellee, Avco Financial Services,[1] in securing the reaffirmation agreement of the appellant's pre-petition debt that had been successfully discharged in bankruptcy. The appellant, Cheryl A. Bessette,[2] fashioned a Complaint seeking relief under the Bankruptcy Code, 11 U.S.C. §§ 105, 362, 524, the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962, and state law, and she moved to certify a class of similarly situated debtors.
 
 
 3
 The district court properly found the appellant's RICO and state law claims untenable. However, operating under a misunderstanding that it was powerless to provide a remedy to the appellant under the Bankruptcy Code, the district court also dismissed the bankruptcy claims in their entirety. See Bessette v. Avco Fin. Servs., Inc., 240 B.R. 147 (D.R.I. 1999). Because we have determined that a remedy was available through the court's equitable powers under § 105 of the Code, we reverse in part, and remand for proceedings consistent with this opinion.
 
 BACKGROUND
 I. Bankruptcy Proceedings
 
 4
 Bessette filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the federal bankruptcy court in Rhode Island. Her debt included sums due to Avco. The bankruptcy court entered orders discharging the appellant's debt, including the Avco obligation. However, prior to the discharge of her debt by the bankruptcy court, the appellant executed a reaffirmation agreement with Avco. The reaffirmation agreement was not filed with the bankruptcy court and did not satisfy other general requirements of 11 U.S.C. § 524, the statutory section that authorizes voluntary reaffirmation agreements.
 
 II. District Court Proceedings
 
 5
 Bessette subsequently brought this action in the United States District Court for the district of Rhode Island seeking damages for alleged violations of the automatic stay and discharge injunction provided by §§ 362 and 524 of the Bankruptcy Code, respectively. The appellant's primary theory was that § 524 provides a private right of action. Alternatively, she contended that the district court is authorized to grant relief via 11 U.S.C. § 105(a), which provides in relevant part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bessette also brought a state law claim for unjust enrichment. She later amended her Complaint to allege that the appellee used the mails to obtain revenues from reaffirmation agreements in violation of RICO. Avco then moved to dismiss the Second Amended Complaint.
 
 
 6
 The district court's decision to grant the motion to dismiss is the subject of the instant appeal.[3] First, the district court concluded that the alleged facts, if true, did not support a violation of § 362.[4] The court next held that § 524 did not provide the appellant with a private right of action. The court then narrowly construed its powers under § 105 and determined that it could not provide any form of relief. The court also concluded that the state law claim was preempted by the Bankruptcy Code. Finally, the court dismissed the RICO claim because the facts as alleged failed to support the existence of a person separate from the enterprise in order to satisfy the elements of the statute.
 
 DISCUSSION
 
 7
 We review the grant of a motion to dismiss de novo, applying the same criteria as the district court. See LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998); Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992). Accordingly, we accept the facts alleged in the Complaint as true, drawing all reasonable inferences in favor of the appellant. See Garita, 958 F.2d at 17. The Court may affirm the dismissal for failure to state a claim only if, under the facts alleged, "'the plaintiff cannot recover on any viable theory.'" Id. (quoting Correa-Martnez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)). Although the pleadings should generally be construed liberally, see Rodrguez v. Doral Mortgage Corp., 57 F.3d 1168, 1171 (1st Cir. 1995), a greater level of specificity is required in RICO cases, see Garita, 958 F.2d at 17 & n.1 (citing Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991)).
 
 
 8
 I. Availability of Relief Under the Bankruptcy Code
 
 
 9
 The effect of a discharge in bankruptcy is explained in 11 U.S.C. § 524. Generally, a discharge in bankruptcy relieves a debtor from all pre-petition debt, and § 524(a) permanently enjoins creditor actions to collect discharged debts. See National Ins. Co. of North America v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re National Gypsum Co.), 118 F.3d 1056, 1062 n.13 (5th Cir. 1997); Hardy v. United States (In re Hardy), 97 F.3d 1384, 1388-89 (11th Cir. 1996); In re Getzoff, 180 B.R. 572, 573 (B.A.P. 9th Cir. 1995). The debtor may, however, voluntarily enter into an enforceable agreement with a creditor to reaffirm an otherwise dischargeable debt. See § 524(c); see also In re Getzoff, 180 B.R. at 574. A reaffirmation agreement is only binding if made in compliance with the specific conditions set forth in § 524. See In re Getzoff, 180 B.R. at 574. For example, § 524 requires that the reaffirmation agreement be filed with the bankruptcy court and that it advise the debtor that the agreement may be rescinded within sixty days of the date of filing with the court. See § 524(c).
 
 
 10
 There is no dispute that the reaffirmation agreement involved in this case falls short of the § 524 criteria. However, § 524 is silent on the ramifications of that failing, and consequently the issue presented in this case is the proper remedy for a violation of § 524.
 
 
 11
 The appellant proposes that § 524 provides an implied right of action against Avco. She argues that a reaffirmation agreement that does not comply with § 524 is void and unenforceable and that, therefore, she is entitled to restitution. The appellee, however, disputes the existence of an implied right of action based upon the four-factor analysis used to determine Congress's intent, set out by the Supreme Court in Cort v. Ash, 422 U.S. 66, 78 (1975). The appellee proffers instead that the proper remedy for a § 524 violation is contempt.
 
 
 12
 Whether there exists a private right of action for damages or sanctions under § 524 is a question of first impression in the First Circuit. Courts that have considered this question are divided. Compare Malone v. Norwest Fin. California, Inc., 245 B.R. 389, 395-98 (E.D. Cal. 2000) (finding an implied right of action); Molloy v. Primus Automotive Fin. Servs., 247 B.R. 804, 819-20 (Bankr. C.D. Cal. 2000) (same), with Transamerica Fin. Servs. v. Danney, No. 99-228-P-H, 1999 WL 33117201, *3 (D. Me. Dec. 23, 1999) (recommendation of magistrate judge affirmed by the district court) (relying on the district court's opinion in Bessette); Cox v. Zale Delaware, Inc., No. 97 C 4464, 1998 WL 397841, at *2-*4 (N.D. Ill. July 13, 1998); Pereira v. First North Am. Nat'l Bank, 223 B.R. 28, 30 (N.D. Ga. 1998); Lenior v. GE Capital Corp. (In re Lenior), 231 B.R. 662, 673-74 (Bankr. N.D. Ill. 1999) (holding that § 524 does not create a private right of action). We see no reason to jump into the fray with the complex analysis required by Cort v. Ash when a remedy is readily and expressly available through another section of the Bankruptcy Code, namely, § 105(a).
 
 
 13
 As this Court has previously recognized, "[s]section 105(a) empowers the bankruptcy court to exercise its equitable powers -- where 'necessary' or 'appropriate' -- to facilitate the implementation of other Bankruptcy Code provisions." Noonan v. Secretary of Health & Human Servs. (In re Ludlow Hosp. Soc'y, Inc.), 124 F.3d 22, 27 (1st Cir. 1997); see also SPM Mfg. Corp. v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305, 1311 (1st Cir. 1993); In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991). While it is true that the considerable discretion conferred on courts sitting in bankruptcy by § 105 is not unlimited, in that it is not "'a roving commission to do equity,'" Noonan, 124 F.3d at 27 (quoting Chiasson v. J. Louis Matherne & Assocs., 4 F.3d 1329, 1334 (5th Cir. 1993)), a court is well within its authority if it exercises its equitable powers to enforce a specific code provision, see id.; SPM MFG., 984 F.2d at 1311, such as § 524. Thus, § 105 does not itself create a private right of action, but a court may invoke § 105(a) "if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code," Noonan, 124 F.3d at 28, so long as the court acts consistent with the Code and does not alter the Code's distribution of other substantive rights, see id.; SPM Mfg., 984 F.2d at 1311.
 
 
 14
 It follows, therefore, and the parties agree, that § 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have. See In re Hardy, 97 F.3d at 1389; In re Elias, 98 B.R. 332, 337 (N.D. Ill. 1989); Cherry, III v. Arendall (In re Cherry, III), 247 B.R. 176, 186-87 (Bankr. E.D. Va. 2000); Matthews v. United States (In re Matthews), 184 B.R. 594, 598 (Bankr. S.D. Ala. 1995). Those contempt powers inherently include the ability to sanction a party. See In re Hardy, 97 F.3d at 1389-90 (recognizing that courts' statutory contempt powers must include the award of monetary and other forms of relief "to the extent such awards are necessary and appropriate to carry out the provisions of the Bankruptcy Code"); Cherry, 247 B.R. at 187 ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.").
 
 
 15
 Against this background it is clear, as the appellee conceded at oral argument, that a bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages for the appellant in this case if the merits so require. Consistent with this determination, bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates § 524. See, e.g., In re Hardy, 97 F.3d at 1389-90; In re Elias, 98 B.R. at 337; Cherry, 247 B.R. at 191; In re Arnold, 206 B.R. 560, 568 (Bankr. N.D. Ala. 1997); Wiley v. Mason (In re Wiley), 224 B.R. 58, 66 (Bankr. N.D. Ill. 1998) (denying motion to dismiss), vacated on other grounds, 237 B.R. 677 (Bankr. N.D. Ill. 1999) (finding class representative inadequate because she suffered no injury); Matthews, 184 B.R. at 599-601; In re Bowling, 116 B.R. 659, 664-65 (Bankr. S.D. Ind. 1990); cf. In re Rosteck, 899 F.2d 694, 697 (7th Cir. 1990) (affirming sanction for violation of § 524 without reference to § 105 contempt powers). Therefore, we hold that § 524 is enforceable through § 105. See Malone, 245 B.R. at 395.
 
 
 16
 Nevertheless, the appellee suggests that this Court should affirm the district court's dismissal of the bankruptcy claims, challenging whether the district court has the authority to sanction the appellee for contempt of an order of the bankruptcy court. The appellee maintains, and the district court opined below, that appellant must bring a contempt proceeding before the bankruptcy court. The district court held that it "would be unable to fashion relief for all the named plaintiffs, because 'sanctions for violations of an injunction, in any event, are generally administered by the court that issued the injunction.'" Bessette 240 B.R. at 156 (citations omitted).
 
 
 17
 While this theory is certainly not without support, see, e.g., Transamerica Fin. Servs., 1999 WL 2003457, at *3; Cox, 1998 WL 397841, at *3-*4 (dismissing claims without prejudice to be brought in bankruptcy court); Pereira, 223 B.R. at 31 ("[T]he court whose order has been defied must entertain the contempt action."), we believe that the contrary authority is more persuasive when dealing, as here, with violation of a purely statutory order. See, e.g., Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1555 (11th Cir. 1996) (recognizing district court's authority to dispose of contempt action for violation of automatic stay); Malone, 245 B.R. at 393 (ordering the case withdrawn from bankruptcy for district court to enforce § 524 through its § 105(a) powers); Williams v. Sears, Roebuck & Co. (In re Williams), 244 B.R. 858, 867-68 (S.D. Ga.2000) (retaining jurisdiction over contempt claims so long as discharge injunction was issued within the same district court). Appellant seeks enforcement of the statutory injunction set forth in § 524, not one individually crafted by the bankruptcy judge, in which that judge's insights and thought processes may be of particular significance. Thus, few of the practical reasons for confining contempt proceedings to the issuing tribunal apply here.
 
 
 18
 As a district court sitting in bankruptcy is similarly authorized to invoke its equitable powers under § 105 when necessary to carry out the provisions of the Bankruptcy Code, see Jove Eng'g, 92 F.3d at 1554; Green v. Drexler (In re Feit & Drexler, Inc.), 760 F.2d 406, 414-15 (2d Cir. 1985); Malone, 245 B.R. at 394, we reverse the district court's holding that appellant could only bring her claims in the court that issued the original discharge order and remand for the district court's consideration of enforcement of § 524 through § 105. See Williams, 244 B.R. at 867-68. If the district court determines that it is appropriate to refer the matter back to the bankruptcy court under 28 U.S.C. § 157 and the Rhode Island standing order, see McGlynn v. Credit Store, Inc., 234 B.R. 576, 583-84 (D.R.I. 1999), the bankruptcy court can accordingly resolve appellant's claims.
 
 
 19
 In favor of district court retention, appellant points out that she seeks class certification and relief, and urges the importance and desirability of this type of broad remedy. See Williams, 244 B.R. at 862 (class-based relief may be the "perfect" remedy in situations like this). However, should the district court refer the case to the bankruptcy court, appellant's ability to pursue her class action remains. Not only does the bankruptcy court have the power to utilize § 105 in enforcing § 524, it is also empowered to maintain class actions and may be able to provide much the same kind of relief, in appropriate situations, as the district court itself. See Fed. R. Bankr. P. 7023 (importing Fed. R. Civ. P. 23 into "adversary proceedings"). In any event, we venture no opinion as to the suitability of class certification in these circumstances, and the decision of whether the district court sitting in bankruptcy should retain jurisdiction or refer the parties to the bankruptcy court rests most appropriately with the district court on remand. See 28 U.S.C. § 157(d).
 
 
 20
 The appellee's remaining contentions are unavailing and merit little discussion. Despite the appellee's suggestion to the contrary, under a generous reading of the Complaint, the appellant's allegations of violations of § 362 and § 524 and requests for appropriate relief were sufficient to put the appellee on notice of the grounds for the complaint, and that is the proper focus of our review. See Rodrguez, 57 F.3d at 1171. Although the possibility of relief for the alleged violations through § 105 was not specifically plead in the form of a motion for contempt, "[i]t is not fatal to a complaint that a legal theory has been mischaracterized or that the precise language invoking jurisdiction has not been used." Torres Ramrez v. Berm£dez Garca, 898 F.2d 224, 226-27 (1st Cir. 1990) (citing Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 604 (5th Cir. 1981) and 5 C. Wright & A. Miller, Federal Practice and Procedure § 1206, at 76-77 (1969)). Moreover, both parties briefed the issue of relief under § 105 before this Court and below. Thus, the appellee will not be unduly prejudiced. See In re Hardy, 97 F.3d at 1388.
 
 
 21
 We also disagree with the appellee that the district court addressed the merits of the appellant's claim under § 105. As discussed above, the district court disregarded the possibility of relief under its statutory contempt power based on its view that a remedy was only available from the court that issued the original injunction. See Bessette, 240 B.R. at 155. Moreover, it is apparent that the court misconstrued the scope of its § 105 equitable powers, and as a result, it failed to recognize that the remedy requested by the appellant was available in the district court.
 
 
 22
 "On remand the district court should determine initially whether, in spite of the District of Rhode Island's standing order adopted under 28 U.S.C. § 157 (a) it wishes to to, and may appropriately, retain jurisdiction under 28 U.S.C. § 157(d); and if the district court determines that retention is inappropriate, shall refer the entire case to the United States Bankruptcy Court for the District of Rhode Island, . . ." See In re Wiley, 224 B.R. at 63, in which case the bankruptcy court can then consider the merits of class certification or consider appropriate individual relief. See, e.g., id. at 65-66, 82 (approving the certification of class actions under § 105 for systemic violations of the Bankruptcy Code). Accordingly, we vacate the district court's judgment on counts I and II of the Complaint and remand for proceedings consistent with this opinion.
 
 II. Availability of Relief Under State Law
 
 23
 The district court determined that state law remedies for unjust enrichment were preempted by congressional intent evidenced in the comprehensive remedial scheme of the Bankruptcy Code. See Bessette, 240 B.R. at 163. Although we disagree with the district court's analysis of the remedies available under the Bankruptcy Code, we concur with its conclusion that the appellant's state law claim for unjust enrichment for collecting debt under an improper reaffirmation agreement is preempted. Because we concluded above that § 105 of the Code authorizes federal courts to order damages for violations of § 524 when necessary -- i.e., disgorgement of unjust profit -- an alternative state court remedy for unjust enrichment in these circumstances is inevitably in conflict with Congress's plan that federal courts enforce § 524 through § 105.
 
 
 24
 In a case such as this, where there is no explicit statutory language preempting state law, this Court will find implied preemption under one of two circumstances: (1) where the federal statutory scheme is so pervasive that Congress clearly intended to "occupy the field" to the exclusion of state law, or (2) where a particular state law is in direct conflict with the federal law to an extent that the statutes cannot coexist. See Summit Inv. & Dev. Corp., v. Leroux, 69 F.3d 608, 610 (1st Cir. 1995); see also MSR Exploration Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 913 (9th Cir. 1996) (quoting Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152-53 (1982)). In reaching our conclusion that a state law claim for unjust enrichment is preempted, we rely on the existence of the first condition.
 
 
 25
 In Patriot Portfolio, LLC v. Weinstein (In re Weinstein), we observed that: "[s]tates may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations." 164 F.3d 677, 682-83 (1st Cir. 1999) (quoting International Shoe Co. v. Pinkus, 278 U.S. 261, 265 (1929)), cert. denied sub nom. Patriot Portfolio, LLC v. Weinstein, 527 U.S. 1036 (1999). The district court correctly noted that the broad enforcement power under the Bankruptcy Code preempts virtually all alternative mechanisms for remedying violations of the Code. See Bessette, 240 B.R. at 163. Other courts that have been faced with a state unjust enrichment claim have held that Congress's intent in enacting the remedial provisions of the Bankruptcy Code leaves "no room for the state cause of action." Cox v. Zale Del., Inc., 242 B.R. 444, 450 (N.D. Ill. 1999). See also Pereira v. First N. Am. Nat'l Bank, 223 B.R. 28, 31-32 (N.D. Ga. 1998); Reyes v. FCC Nat'l Bank (In re Reyes), 238 B.R. 507, 513 (Bankr. D.R.I. 1999).
 
 
 26
 In contrast, in Vahlsing v. Commercial Union Insurance Co., 928 F.2d 486 (1st Cir. 1991), a panel of this Court permitted a state law cause of action for violation of the § 362 automatic stay to go forward. However, in that case the state law tort claims arose because the creditor, unaware of the bankruptcy proceeding, had the debtor arrested for contempt. There was no comparable overlap between a specific remedy available under the Bankruptcy Code and the state law remedies for false imprisonment, negligence, abuse of process.[5] Similarly, we find the appellant's reliance on Sears, Roebuck & Co. v. O'Brien, 178 F.3d 962 (8th Cir. 1999), and Greenwood Trust Co. v. Smith, 212 B.R. 599 (B.A.P. 8th Cir. 1997), misplaced because again there was no overlap between the Code and the state laws at issue in those cases; the Iowa state laws that regulated contact between clients and lawyers did not impede or interfere with the applicable provisions of the Bankruptcy Code. Therefore, we agree with the district court that the state law cause of action for unjust enrichment is preempted by the Bankruptcy Code.
 
 III. Availability of Relief Under RICO
 
 27
 We turn to the appellant's final theory for relief, RICO. The district court assumed that the appellant, in Counts IV, V, and VI of her Complaint, was alleging violations under 18 U.S.C. § 1962(c), and the appellant has not contested that characterization of her claims. Proceeding with the same understanding, we can quickly dispose of the appellant's RICO claims.
 
 A. Section 1962(c)
 Section 1962(c) provides:
 
 28
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 
 
 29
 For the appellant's § 1962(c) claim to survive the appellee's motion to dismiss, the Amended Complaint needed to allege: "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity." Doyle v. Hasbro, Inc., 103 F.3d 186, 189 (1st Cir. 1996) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). Additionally, it is well settled in this circuit that the "person" identified under § 1962(c) must be distinct from the "enterprise." See id. at 190-91; Miranda, 948 F.2d at 44 ("[T]he same entity cannot do double duty as both the RICO defendant and the RICO enterprise."). Similarly, an "enterprise" may not be held directly, or indirectly, liable for the conduct of the "person." See Miranda, 948 F.2d at 45 (citing Schofield v. First Commodity Corp. of Boston, 793 F.2d 28, 29-34 (1st Cir. 1986)); Odishelidze v. Aetna Life & Cas. Co., 853 F.2d 21, 23 (1st Cir. 1988). Because the defendant and the enterprise must be distinct, the appellant's RICO claims must fail.
 
 
 30
 The district court concluded that the appellant failed to plead sufficiently the existence of an enterprise distinct from the RICO person and dismissed all three counts of the appellant's RICO claim for failure to state a claim upon which relief could be granted. The appellant does not appeal the dismissal of Count V. We deal with the remaining two counts in turn.
 
 B. Count IV
 
 31
 In Count IV of the Complaint, the appellant alleges that AFS Management is the person defined in 18 U.S.C. § 1961 and that Textron is the "enterprise" as defined in § 1961(4). She further alleges that Textron delegated to AFS Management the conduct of certain aspects of its business, the profits of which went to Textron. And finally, she alleges that AFS Management conducted the delegated business activities through repeated acts of mail fraud. The district court held that because AFS Management is a subsidiary of Textron, they are the same entity and that, therefore, AFS Management cannot be the "person" under RICO as the appellant alleges. See Bessette, 240 B.R. at 160-61.
 
 
 32
 This circuit has consistently refrained from adopting a bright line rule that a subsidiary can never be distinct from its parent corporation, see Deane v. Weyerhaueser Mortgage Co., 967 F. Supp. 30, 34 (D. Mass. 1997) (analyzing First Circuit law), and despite appellant's arduous arguments in favor of such a rule, we are not persuaded to do so today. Rather, we will continue to look to the allegations in the complaint to determine whether the parent's activities are sufficiently distinct from the those of the subsidiary at the time that the alleged RICO violations occurred. See id.; see, e.g., Compagnie de Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 92 (1st Cir. 1995) (reviewing evidence that supported finding that parent and subsidiary were not distinct for § 1962(c) purposes).
 
 
 33
 Consequently, we agree with the district court that the assertion that AFS Management is a person distinct from the enterprise is insufficient, and the failure to allege that AFS Management took actions independent of Textron is fatal to the appellant's claims. See Brannon v. Boatmen's First Nat'l Bank of Oklahoma, 153 F.3d 1144, 1147-48 (10th Cir. 1998); Compagnie, 57 F.3d at 92. In most cases, a subsidiary that is under the complete control of the parent company is nothing more than a division of the one entity. Without further allegations, the mere identification of a subsidiary and a parent in a RICO claim fails the distinctiveness requirement. See, e.g., Arzuaga-Collazo v. Oriental Fed. Sav. Bank, 913 F.2d 5, 6 (1st Cir. 1990); see also Emery v. American Gen. Fin., Inc., 134 F.3d 1321, 1324-25 (7th Cir.) (explaining that it would be a different situation if criminals took over a subsidiary and wrested control of the parent and used the parent as an instrument for further criminal activities), cert. denied, 525 U.S. 818 (1998). This position was advocated by the Seventh Circuit in Emery v. American General Financial, Inc., 134 F.3d 1321, 1324-25 (7th Cir. 1998), and concisely expressed by the Tenth Circuit in Brannon v. Boatmen's First National Bank of Oklahoma, 153 F.3d 1144, 1148 (10th Cir. 1998): "[A]t a bare minimum, an allegation of RICO liability under 1962(c) must indicate how the defendant used the alleged enterprise to facilitate the fraudulent conduct." Otherwise, a subsidiary that simply conducts its affairs as delegated by the parent company for the profit of the parent company is engaged in nothing more than a legitimate corporate and financial relationship, see id.; Deane, 967 F. Supp. at 34, which is certainly not subject to RICO liability on that basis alone. As the Seventh Circuit has explained, a scheme does not implicate RICO merely because it originated with someone connected to a corporation. See Emery, 134 F.3d at 1324-25. Accordingly, we agree with the dismissal of Count IV.
 
 C. Count VI
 
 34
 Count VI identifies John Does 1-10 as the "person" and AFS and Textron each as an "enterprise." Specifically, the appellant alleges that John Does, as AFS employees, conducted the business activities of the enterprises through mail fraud. The problem with this formulation of the claim is that employees acting solely in the interest of their employer, carrying on the regular affairs of the corporate enterprise, are not distinct from that enterprise. See id.; Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339, 344 (2d Cir. 1994) ("[W]here employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.").
 
 
 35
 The Complaint avers that the John Does were acting in the scope of their authority as employees of Avco and nothing more. The appellant does not allege that the John Does were associated in any manner apart from the activities of the enterprise, and therefore, under the heightened standard required for RICO claims, see Garita, 958 F.2d at 17 & n.1, she fails to state a claim for which relief can be granted under RICO, see Riverwoods, 30 F.3d at 344 (discussing Atkinson v. Anadarko Bank & Trust Co., 808 F.2d 438, 440-42 (5th Cir. 1987) (per curiam)). Thus, Count VI was properly dismissed.
 
 CONCLUSION
 
 36
 Because the appellant sufficiently stated a claim for relief from a violation of § 524 under § 105 of the Bankruptcy Code, we vacate the dismissal of Counts I and II of the Complaint, and remand for proceedings consistent with this opinion. However, we affirm the district court's dismissal of the remaining counts of the Complaint for the reasons discussed above.
 
 
 
 Notes:
 
 
 *
 Of the Northern District of California, sitting by designation.
 
 
 [1]
 The defendants-appellees (collectively "Avco") are Avco Financial Services, Inc. ("AFS"), Avco Financial Services Management Co. ("Avco-Management"), Avco Financial Services of Rhode Island, Inc. ("AFS-RI"), Avco Financial Services of Colorado ("AFS-CO"), and John Does 1-10. AFS changed its name to Textron Funding Corporation on January 7, 1999. Textron Funding is a wholly-owned subsidiary of Textron, Inc.
 
 
 [2]
 Bessette filed her Complaint on August 25, 1997. The district court subsequently permitted Bessette to amend her Complaint to add an additional plaintiff, Francisco Gonzalez. Gonzalez is not part of this appeal.
 
 
 [3]
 The appellant does not appeal the dismissal of Count III of the Complaint, the violation of the automatic stay provision of the Code, and Count V of the Complaint, one of the three RICO charges.
 
 
 [4]
 On a related matter, the appellee moved to strike from the appellate record the "Affidavit of Cheryl Bessette" appended as Exhibit A to the appellant's brief. For the most part, the affidavit relates to allegations in support of Count III, which is not part of this appeal. That said, the affidavit was properly before the district court because it was attached to the appellant's opposition to the motion to dismiss. Furthermore, the district court considered the affidavit in reaching its decision to dismiss Count III and grant the appellant leave to amend the claim under § 362(a). See Bessette, 240 B.R. at 158. The motion to strike is denied.
 
 
 [5]
 Furthermore, it is not apparent whether the issue of federal preemption was directly before the court.