1998 OK CR 23

Faramarz **MEHDIPOUR,** Appellant,

v.

**STATE of Oklahoma, Appellee.**

No. F–96–1480.

Court of Criminal Appeals of Oklahoma.

April 3, 1998.

Rehearing Denied April 22, 1998.

Faramarz Mehdipour, pro se, at trial.

Jaye Mendros, Assistant Public Defender, Oklahoma City, Standby Counsel at trial.

Lisa Hammond, Assistant District Attorney, Oklahoma City, for State at trial.

Mac Oyler, Oklahoma City, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Sandra D. Howard, Chief, Criminal Appeals, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## *OPINION*

CHAPEL, Presiding Judge:

¶ 1 Faramarz Mehdipour was tried by jury and convicted in the District Court of Oklahoma County, Case No. CF–91–3221, of Attempting to Intimidate a State's Witness in violation of 21 O.S.1991, § 455. In accordance with the jury's recommendation the Honorable James L. Gullet sentenced Mehdipour to sixty (60) years imprisonment. Mehdipour appeals from this conviction and sentence and raises eight propositions of error. Finding no error warranting modification or reversal, we affirm. However, Mehdipour raises an issue of first impression concerning the interpretation of 21 O.S.1991, § 455.

¶ 2 On July 11, 1991, Mehdipour approached Darrel Council outside an Oklahoma County District Court courtroom. Council was supposed to testify against Chester Bruce, a friend of Mehdipour's, in a drug case. Mehdipour called Council a snitch and threatened to harm him if he testified against Bruce. When Council moved into a hallway Mehdipour followed him and repeated the threats. As a result of the threats Council became scared and nervous, and he was not called to testify.

¶ 3 This case has a long and complicated procedural history. Mehdipour was originally charged with intimidating a witness under 21 O.S.1991, § 455.[1] He waived preliminary hearing. On April 12, 1993, the Information was amended by interlineation to a charge of attempting to intimidate a witness, also under 21 O.S.1991, § 455. After several delays Mehdipour was tried and convicted, but that conviction was reversed by this Court for a violation of notice regarding Mehdipour's right to counsel if indigent.[2] After several more delays, including hearings before three District Court judges, Mehdipour was again

---

1. 21 O.S.1991, § 455 was amended in 1993. Mehdipour continued to be charged under the 1991 statute.

2. *Mehdipour v. State,* No. F–94–158 (Okl.Cr. December 24, 1994) (not for publication)

tried and convicted. Although Mehdipour was represented by a variety of retained counsel for many court proceedings, and had public defenders appointed as standby counsel for a proceeding and this trial, he discharged counsel and represented himself at trial.

¶ 4 Propositions I, II and III all depend on Mehdipour's claim that the crime with which he was initially charged, Intimidating a State's Witness, and the crime of which he was convicted, Attempting to Intimidate a State's Witness, are fundamentally different. Mehdipour was charged in both the original and amended Informations with violating 21 O.S.1991, § 455. Mehdipour argues, as he did exhaustively at every stage of the proceedings, that Attempting to Intimidate a State's Witness must be charged as an attempt crime under 21 O.S.1991, § 44. In Proposition I he claims the jury was incorrectly instructed on the elements of the crime because the jury was not fully instructed on the elements of attempt. In Proposition II he claims he cannot be convicted under the attempt statute since the evidence showed the crime was completed. In Proposition III he claims the State failed to prove the material elements of Attempting to Intimidate a State's Witness by failing to fully prove all the elements of an attempt crime under 21 O.S.1991, § 44.

■ ¶ 5 After thorough review of the statutes in question and case law, we disagree with Mehdipour's interpretation of 21 O.S.1991, § 455. The State repeats the prosecutor's argument at trial and argues that Section 455 encompasses both the attempt to intimidate a witness and the completed action, as long as a defendant acts with the intent to prevent a witness from testifying. Mehdipour supports his claims with cases construing the attempt statute, 21 O.S.1991, § 44; the State's cases concern the prosecutor's decision to charge a particular offense

and whether the Information conferred jurisdiction on the trial court.[3] Neither party cites any case, and we have found none, which determines whether attempts to intimidate a witness must be charged separately under 21 O.S.1991, § 44, or are included in the language of Section 455. This question constitutes an issue of first impression.

¶ 6 The statute under which Mehdipour was charged reads:

> Every person who willfully prevents any person from giving testimony who has been duly summoned or subpoenaed or endorsed on the criminal information or juvenile petition as a witness or threatens physical or mental harm through force or fear *with the intent to prevent the witness from appearing in court to give his testimony, or to alter his testimony,* is guilty of a felony punishable by not less than one (1) year nor more than ten (10) years in prison.[4]

¶ 7 The statute's plain language refers to two separate actions a defendant may take: (1) willfully preventing testimony, and (2) threats of physical or mental harm through force or fear with the intent to prevent a witness from testifying at all, or to cause a witness to alter his testimony. The conduct prohibited is the intentional prevention of testimony, or threat of prevention of testimony. As the statute is worded, the crime is completed whether or not a defendant's actions actually prevent a witness from testifying, as long as a defendant makes threats using force or fear intending to prevent a witness's testimony. The statute does not distinguish between attempts to intimidate a witness which fail, and intimidation which results in failure to testify; the key question is whether the defendant intended to prevent the witness from testifying when he committed the act charged as intimidation. Therefore, Section 455 encompasses both successful witness intimidation and unsuc-

---

**3.** Although Mehdipour vigorously and mistakenly argued at each stage of the proceedings below that any perceived defect in the Information robbed the trial court of jurisdiction, he does not repeat this argument on appeal.

**4.** 21 O.S.1991, § 455 (emphasis added). Section 455 was amended in 1993, and this opinion construes the statute as it was when Mehdipour was charged. However, the language we rely on remains unchanged in the current version of the statute, as well as in the version effective July 1, 1998. Our interpretation applies to these versions as well.

cessful attempts to intimidate a witness. Attempting to Intimidate a State's Witness may be charged under Section 455, without resort to the attempt statute.

¶ 8 Under the plain language of Section 455, Mehdipour's first three Propositions must fail. The trial court's instructions on the elements of Attempting to Intimidate a Witness were correct. As the crime was not charged under the attempt statute, the trial court did not err in failing to instruct on the elements of performance of an overt act and failure to complete the crime. Mehdipour's conviction for Attempted Intimidation of a Witness may stand, even though evidence at trial indicated Mehdipour successfully prevented Council from testifying through his use of threats, because Section 455 is satisfied with proof of threats made with intent to prevent testimony whether or not a witness actually testifies. The statutory prohibition against conviction for an attempt where evidence shows a completed crime does not apply.[5] The State proved the material elements of the crime charged by presenting evidence that Mehdipour threatened Council with physical harm through force or fear with the intent to prevent him from testifying against Chester Bruce. The State was not required to prove lack of consummation of the offense.[6] Propositions I, II and III are denied.

¶ 9 In Proposition IV Mehdipour claims that the trial court erred in refusing to recuse, and also complains that his rights were violated when he was removed from the courtroom for the first stage of the trial. To sustain a claim of bias, Mehdipour must show the trial court "harbored prejudice against him which materially affected his rights at trial."[7] This record cannot support such a claim. A thorough review of the original record and transcripts shows the trial court was not biased against Mehdipour. The trial court went to extraordinary lengths to pro-

tect his rights to a fair and impartial jury and a fair trial, and to create a complete record for this Court. The record shows that Mehdipour was obstructive from the very beginning, bursting into complaints that the trial court had no jurisdiction and that the proceedings were illegal; he refused to properly voir dire jurors or give an appropriate opening statement; he disobeyed the trial court's orders to avoid discussing the issues of jurisdiction and procedure; he raised these issues in three separate motions immediately before trial and refused to accept the trial court's order denying the motions; he consistently failed to listen to the trial court; and he eventually was removed from the courtroom after refusing to participate in the proceedings and repeatedly disrupting the trial. The trial court appointed Mehdipour standby counsel; required counsel to remain despite Mehdipour's objections; admonished the jury to disregard Mehdipour's frequent outbursts; installed a closed-circuit camera and microphone in the courtroom so Mehdipour could see and hear the proceedings; offered him the opportunity to cross-examine witnesses, object to evidence and instructions, present argument, and demur to the evidence; and returned Mehdipour to the courtroom briefly when Mehdipour stated he would behave appropriately (Mehdipour immediately disrupted the proceedings again and was removed). During the second stage of trial Mehdipour was present in the courtroom and the trial court gave him remarkable leeway in his objections to evidence and his closing argument to the jury.

¶ 10 The record belies Mehdipour's specific allegations of error. He claims the trial court coerced him into waiving his right to counsel. On the contrary, the record clearly shows Mehdipour knowingly, intelligently, and voluntarily waived counsel in order to represent himself, and spurned the

---

**5.** 21 O.S.1991, § 41.

**6.** In Proposition III Mehdipour appears to argue that his second trial violates principles of double jeopardy because the evidence was also insufficient to convict him at his first trial. Mehdipour is mistaken about the state of the evidence in both trials, either of which was sufficient to convict him of the crime charged. In addition, this Court did not rule on Mehdipour's insufficiency of the evidence claim in his appeal from his first trial, but reversed the case on technical grounds. Double jeopardy did not attach.

**7.** *Bryan v. State,* 935 P.2d 338, 354 (Okl.Cr. 1997).

trial court's offer of standby counsel. Mehdipour claims the trial court admitted communicating with other judges about the case and was consequently infected by their bias, and notes several other judges recused before trial. Mehdipour appears somewhat confused by the record. Upon remand, this case was assigned to several judges who heard various proceedings before recusing.[8] The judges who heard Mehdipour argue motions based on his jurisdictional and procedural claims denied those motions before recusing, and the trial record reflects that Mehdipour conflated these events: he appeared to believe that a judge who rejected his arguments must subsequently recuse. This is of course not the case. The trial court stated it had reviewed the entire record in the case, including all the transcripts of all previous proceedings. In passing, the trial court mentioned speaking to other judges who had handled various proceedings. This admission does not suggest the trial court was "infected" with bias, as the record has not demonstrated the judges who heard substantive motions in the case were biased against Mehdipour in any way. Mehdipour finally claims the trial court erred in removing him from the courtroom. Mehdipour waived his right to be present by engaging in such disruptive and disrespectful conduct that the trial could not continue.[9] Proposition IV is denied.

◼ ¶11 In Proposition V, Mehdipour claims the case must be reversed because the record does not show that the various District Courts before which he appeared notified him of his right to appointed counsel if he was indigent. This Court is not persuaded by Mehdipour's claim that he had no notice of this right. Mehdipour was clearly aware of this Court's December 24, 1995 Order reversing his original trial on those grounds, and that decision sufficiently informed Mehdipour of this right. In addition, the record shows that Mehdipour was aware of the right, and twice had public defenders appointed to represent him, over his objection, without any finding of indigence. This proposition is denied.

◼ ¶12 In Proposition VI Mehdipour first complains the prosecutor, in argument, referred to the evidence as "uncontroverted"; he claims these references impermissibly commented on his failure to testify. This Court has repeatedly held a prosecutor may state that evidence is uncontroverted.[10] Mehdipour also argues that the prosecutor should not have referred to his courtroom behavior, and that the trial court should not have instructed the jury on Mehdipour's failure to testify. The State responds to neither argument. While the prosecutor should not have referred to Mehdipour's courtroom behavior, this error alone does not justify modification or reversal, and the trial court admonished the jurors to disregard Mehdipour's outbursts.[11] It is the better practice not to give Oklahoma Uniform Jury Instruction (Criminal) No. 845, regarding a defendant's failure to testify, unless the instruction is requested by the defendant. Mehdipour did not object to this instruction specifically, although he did object to the instructions as a whole on the grounds that the trial should not have proceeded, and we review for plain error only. The record suggests the trial court gave the instruction, in light of Mehdipour's repeated refusal to participate in the pro-

---

8. Two judges recused themselves on Mehdipour's motion, without comment. Only Judge Daniel Owens specifically recused himself for bias. We note that Judge Owen's comments on the record [3/17/95 TR 7, 12, 15, 16, 18] about both Mehdipour and this Court indicated an extreme lack of propriety and common sense.

9. *Patterson v. State*, 735 P.2d 338, 342 (Okl.Cr. 1987); *Parker v. State*, 556 P.2d 1298, 1302–04 (Okl.Cr.1976). Mehdipour refused to make an appropriate opening statement and his repeated claims that the trial was illegal prevented the State from calling its first witness.

10. *See, e.g., Fite v. State*, 873 P.2d 293, 297 (Okl.Cr.1993).

11. A prosecutor may comment on a defendant's non-testimonial courtroom demeanor only when the defendant testifies. *Mitchell v. State*, 884 P.2d 1186, 1203 (Okl.Cr.1994), *cert. denied*, 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995). Mehdipour did not testify and the argument was inappropriate.

ceedings, in an attempt to protect Mehdipour's rights and to discourage the jury from improperly drawing adverse inferences from Mehdipour's failure to testify. The instruction was an accurate statement of the law and does not rise to the level of plain error. This proposition is denied.

¶ 13 In Proposition VII Mehdipour argues the prosecutor told the jury in first stage closing argument that the presumption of innocence was gone. We disagree. Taken as a whole, the prosecutor's argument stated the jury was instructed that Mehdipour was presumed innocent until the State presented evidence establishing the elements of the offense beyond a reasonable doubt. This is not an inaccurate statement of the law. In addition, the jury was instructed at every stage of the trial that Mehdipour was presumed innocent.

¶ 14 Mehdipour also argues in Proposition VII that his conviction must be reversed because some jurors apparently saw him wearing handcuffs in the hallway before trial began. A defendant may not be tried before a jury in chains or shackles.[12] Mehdipour brought this to the Court's attention after opening statements, as he was removed from the courtroom; his comment "This is mistrial" may have been a request for a mistrial based on that incident or may have also referred to his vigorous argument that the Court did not have jurisdiction to proceed with the case. In any event, this Court has held this statutory proscription is not violated when members of the jury see a defendant briefly while he is handcuffed outside the courtroom.[13] This proposition is denied.

¶ 15 In Proposition VIII Mehdipour argues the accumulation of error justifies reversal or modification. A thorough review of Mehdipour's claims and the record in this case reveals no error which, singly or in combination, would justify either modification or reversal.[14] This proposition is denied.

## Decision

¶ 16 The Judgment and Sentence of the District Court is **AFFIRMED**.

STRUBHAR, V.P.J., and LUMPKIN and JOHNSON, JJ., concur.

LANE, J., concur in results.

LANE, Judge, concur in results:

¶ 1 I disagree with the opinion of the majority to the extent that I concur in results.

¶ 2 I believe that the State led us down the wrong path when it labeled the crime "Attempting to Intimidate a State's Witness." Our statute 21 O.S.1991, § 455 sets out two ways that the statute can be violated. The first is preventing a person from testifying. The second, the one presently concerning us, is threatening physical or mental harm with intent to prevent a witness from testifying or to get the witness to alter his testimony. Appellant accomplished this when he made the threats in the hallway of the court house. Therefore, the use of the word "attempting" in the label of the offense was improper. However, this would not affect the outcome of the case. The body of the information properly charges the crime. Since the body of the Information controls over the label that is put on the crime, reversible error did not occur. *Roberson v. State*, 1996 OK CR 48, ¶ 11, 362 P.2d 1115, 1117.

12. 22 O.S.1991, § 15.

13. *Robedeaux v. State*, 866 P.2d 417, 424 (Okl.Cr. 1993), *cert. denied*, 513 U.S. 833, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994).

14. In addition to repeating the allegations of error raised in the previous propositions, Mehdipour alleges the prosecutor committed other instances of misconduct. He claims the prosecutor conveyed erroneous impressions, argued outside the evidence, and made a "county line" argument, without citation to the record. Mehdipour suggests these arguments were raised in Proposition VI but they do not appear there. This Court is unable to find the alleged errors of which Mehdipour complains.