2001 OK CR 26

**Grover Lee MISKOVSKY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–2000–564.**

Court of Criminal Appeals of Oklahoma.

Sept. 6, 2001.

John Albert, Oklahoma City, OK, Attorney for Defendant.

Lou Keel, Assistant District Attorney, Richard Wintory, Senior Assistant D.A., Oklahoma City, OK, Attorneys for the State.

Lisbeth L. McCarty, Appellate Defense Counsel, Norman, OK, Attorney for Appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma, Keeley L. Harris, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellees.

### SUMMARY OPINION

CHAPEL, Judge:

¶ 1 Grover Lee Miskovsky was tried by jury and convicted of Count I, Racketeering in violation of 22 O.S.1991, § 1403; Count II, Indecent Exposure in violation of 21 O.S.Supp.1996, § 1021; and Count III, Attempted Perjury by Subornation in violation of 21 O.S.1991, § 504, in the District Court of Oklahoma County, Case No. CF–99–1787. In accordance with the jury's recommendation the Honorable Twyla Mason Gray sentenced Miskovsky to eighty-four (84) years imprisonment (Count I); seven (7) years imprisonment (Count II); and two (2) years imprisonment (Count III). Miskovsky appeals from these convictions and sentences.

¶ 2 Miskovsky raises ten propositions of error in support of his appeal:

I. The trial court erred in admitting evidence seized from Miskovsky's office because there were insufficient facts stated in the affidavit to support the search warrant;

II. The trial judge erred by refusing to recuse;

III. The trial judge erred by failing to allow Miskovsky to represent himself in this case;

IV. The trial judge erred by tainting the jury;

V. The trial judge erred by admitting testimony involving the Ware children;

VI. The State's evidence was insufficient to prove the violation of the Oklahoma Corrupt Organizations Prevention Act;

VII. The trial court erred by not granting a mistrial after the admission of irrelevant evidence;

VIII. The evidence was insufficient to support the charge of attempted subornation of perjury;

IX. The Oklahoma Corrupt Organization Act, as charged in this case, violates the constitutional ban on ex post facto laws; and

X. The sentence imposed is excessive, in part because of prosecutorial misconduct, and should be modified.

¶ 3 After thorough consideration of the entire record before us on appeal including the original record, transcripts, briefs and exhibits of the parties, we find neither reversal nor modification is required. However, Propositions VI and IX present questions of first impression and we discuss them fully.

¶4 Miskovsky, an Oklahoma City lawyer, was charged with racketeering by using his law practice to engage in criminal sexual behavior with both adult female clients and children of clients from 1976 through 1996. He was also charged with attempting, through a former law partner, to get an important witness for the State to change her story before his trial in 1999.

¶5 In Proposition VI Miskovsky claims the State's evidence was insufficient to prove the violation of the Oklahoma Corrupt Organizations Prevention Act (RICO). This statute prohibits a person from profiting through racketeering activity through the affairs of an enterprise.[1] The State must prove both the existence of an enterprise and participation in its affairs through a connected pattern of racketeering activity.[2] The State alleged the necessary enterprise was Miskovsky's law practice, and alleged as predicate offenses eighteen crimes committed against nine victims from 1976 through 1999. The allegations included various forms of child sexual abuse, sodomy, rape by instrumentation, procuring, and indecent exposure. Miskovsky argues the State failed to prove either an enterprise or a pattern of racketeering activity.

¶6 Miskovsky claims that the RICO statute should not be applied to his situation, and argues his prosecution was an attempt to punish him for "garden-variety" sex crimes on which the statute of limitations had run. We recently interpreted the appropriate scope of RICO in *Glenn v. State*.[3] There we found that RICO was not intended to prosecute two men who engaged in a short-term series of local cattle thefts and sales, and who were successfully prosecuted

for those felonies.[4] Miskovsky's case presents a different situation. As we discuss below, Miskovsky used a legal enterprise to engage in a pattern of prohibited activity for twenty years. While Miskovsky's main object appeared to be personal sexual satisfaction rather than economic gain, the evidence showed he operated a legitimate business at least in part to further his criminal goals. This activity, conducted over a long period of time, had an effect on society greater than the effect of his individual crimes.[5] Like Glenn, Miskovsky compares his case to *Barrett v. Tallon*.[6] In this case the comparison is not apt. Unlike *Barrett*, prosecutors here scrupulously pled each element of the crime. The fact that the statute of limitations had expired on several of the substantive felony charges did not preclude their use as predicate offenses for RICO (see our discussion of Proposition IX below). Miskovsky's prosecution is within the scope of the RICO statute.

¶7 Having determined the RICO prosecution is proper, we turn to the enterprise requirement. In *United States v. Turkette*,[7] the United States Supreme Court defined enterprise as requiring the Government to prove the existence of an ongoing organization in which associates function as a continuing unit, existing separately from the racketeering activity. An enterprise is "any union or group of individuals associated in fact,"[8] and "a group of persons associated together for a common purpose of engaging in a course of conduct."[9] An enterprise includes any group of persons associated in fact who are involved in any lawful or unlawful project or undertaking.[10] An enterprise must have a structure and goals separate from the predicate acts themselves, with continuity and dif-

---

1. 22 O.S.1991, § 1403.

2. 22 O.S.1991, § 1403(A); OUJI–CR (2nd) 3–28.

3. 2001 OK CR 15, 26 P.3d 768.

4. *Glenn*, 26 P.3d 768, 2001 OK CR 15, ¶ 10.

5. *Id.*

6. 30 F.3d 1296 (10th Cir.1994) Cattle companies sued for fraud and conversion under RICO. The United States District Court for the Eastern District of Oklahoma dismissed the claims, holding the plaintiffs failed to state a claim under RICO. The Tenth Circuit, affirming, noted that the plaintiffs failed to plead two elements of a RICO

claim and stated, "[T]he district court correctly observed that the plaintiffs attempted 'to dress a garden-variety state fraud and/or conversion case in RICO clothing'."

7. 452 U.S. 576, 583, 101 S.Ct. 2524, 2529, 69 L.Ed.2d 246 (1981). *Turkette* held an enterprise may be legal or illegal in nature.

8. 452 U.S. at 580, 101 S.Ct. at 2527.

9. 452 U.S. at 583, 101 S.Ct. at 2528.

10. 22 O.S.Supp.1993, § 1402(2); OUJI–CR (2nd) 3–34.

ferentiation of roles within the organization, and a common purpose.[11] In *United States v. Riccobene*,[12] the Third Circuit used a three-part framework to analyze these restrictions. *Riccobene* interpreted "ongoing organization" to require a structure for group decision-making, with an ongoing mechanism for controlling or directing the group's affairs.[13] It interpreted the "continuing unit" requirement to mean "that each person perform a role in the group consistent with the organizational structure established by the first element and which furthers the activities of the organization."[14]

¶ 8 Miskovsky appears to argue that an enterprise must be proved to have an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity. That is, Miskovsky appears to urge this Court to adopt a "separate proof" test rather than looking only at the evidence also offered to prove the pattern of racketeering. The courts are split on whether an enterprise must be proved by separate evidence from that necessary to prove the pattern of racketeering activity. In *United States v. Bledsoe* the Eighth Circuit required separate proof for each element.[15] The Eighth Circuit reaffirmed this requirement in *Diamonds Plus, Inc. v. Kolber*,[16] finding

evidence which showed a separate structure and was not necessary to prove the predicate acts. Of course, in addition to requiring separate evidence the Eighth Circuit also considers the facts used to support the racketeering activity.[17] In determining the nature of an enterprise *Bledsoe* cited a Fourth Circuit case, *United States v. Griffin*,[18] which considered the characteristics of an association-in-fact enterprise. The Fourth Circuit concluded such an enterprise requires proof of a common purpose, shown through a formal or informal ongoing organization in which the associates function as a continuing unit.[19] Findings of continuity, unity, shared purpose and identifiable structure guard against the danger of guilt by association.[20]

¶ 9 Miskovsky relies on *Brannon v. Boatmen's Bancshares, Inc.*,[21] where the Western District of Oklahoma similarly concluded that an enterprise must have some formal or informal structure, with continuity, differentiation of roles within the association and a common purpose. Plaintiff car dealerships sued the bank and subsidiaries, alleging the bank bought their consumer credit contracts written to finance car purchases, then "force placed" insurance on the vehicles, adding to the consumer debt. The Court dismissed the RICO claims, finding no enterprise where

**11.** *Brannon v. Boatmen's Bancshares, Inc.* 952 F.Supp. 1478, 1483 (W.D.Okla.1997), *aff'd, Brannon v. Boatmen's First Nat. Bank of Oklahoma,* 153 F.3d 1144 (10th Cir.1998).

**12.** 709 F.2d 214 (3rd Cir.), *cert. denied sub nom. Ciancaglini v. United States,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983).

**13.** *Riccobene,* 709 F.2d at 222.

**14.** *Id.* at 223.

**15.** 674 F.2d 647, 664, (8th Cir.), *cert. denied sub nom. Phillips v. U.S.,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). The United States admitted that the enterprise alleged was the persons engaging in securities fraud, not the agricultural co-ops whose securities were sold. The question on appeal was whether there was sufficient evidence of a single enterprise consisting of the individual defendants associating in fact and distinct from the co-ops.

**16.** 960 F.2d 765, 770 (8th Cir.1992). This case charged wire and mail fraud in connection with a fraudulent commercial financing scheme. *See also United States v. Leisure,* 844 F.2d 1347, 1363 (8th Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct.

324, 102 L.Ed.2d 342 (1988) (structure proved by evidence "viewed in complete isolation from the group's pattern of racketeering activity.")

**17.** *Diamonds Plus, Inc.,* 960 F.2d at 771.

**18.** 660 F.2d 996 (4th Cir.1981), *cert. denied sub nom. Garonzik v. United States,* 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 313 (1982). *Griffin* involved a scheme where three men, individually arrested for gambling offenses, entered into a scheme to bribe the Baltimore Police Department. The gambling operations affected interstate commerce.

**19.** *Griffin,* 660 F.2d at 1000.

**20.** *Id.*

**21.** 952 F.Supp. 1478 (W.D.Okla.1997), *aff'd, Brannon v. Boatmen's First Nat. Bank of Oklahoma,* 153 F.3d 1144 (10th Cir.1998). On appeal the parties contested only the District Court's finding that plaintiffs had not shown an enterprise distinct from the defendant corporate "person"; the Tenth Circuit affirmed, discussing the parent-subsidiary corporate relationship in the RICO context.

the plaintiffs did not allege any particular structure among the defendant companies beyond the alleged fraudulent business deals. *Brannon* relied on the Seventh Circuit's analysis in *Richmond v. Nationwide Cassel, L.P.*[22] This was also a "forced place" insurance case involving a car purchase. Affirming the district court's dismissal of a RICO claim, the Seventh Circuit emphasized the importance of proof that an enterprise has a structure and goals separate from the predicate acts, including proof of continuity, different roles and a common purpose.[23]

¶ 10 In *United States v. Sanders,*[24] a drug trafficking case, the Tenth Circuit stated *Turkette* did not necessarily require different proof for the enterprise and racketeering elements. However, the Court then used the *Riccobene* three-part framework—ongoing organization, continuing membership and separate existence—to analyze the evidence showing the existence of an enterprise. The Court found that separate evidence showed a group which conducted numerous predicate acts and benefited from heroin sales without "any particular contribution of individuals".[25] Despite its interpretation of *Turkette,* the opinion appears to rely on different proof of the elements in order to find the existence of an enterprise separate and apart from the racketeering crimes.

¶ 11 In *United States v. Blinder*[26] the Ninth Circuit noted the split in the circuits over whether the State must prove a RICO enterprise has an ascertainable structure distinct from the structure inherent in the conduct of a pattern of racketeering activity.[27] The Court noted it had heretofore managed to avoid taking a position either way, and did so once again. The "enterprise" alleged was a group of corporations. The Ninth Circuit had previously held the more stringent "separate existence" standard was met (a) where an enterprise consisted of a single legal entity, and (b) where, of a number of defendant entities, at least one included legal activities, the enterprise comprised of the whole was held to be at least somewhat separate from the pattern of racketeering activity.[28] In other words, the Ninth Circuit apparently will require proof of a separate ascertainable structure where it finds there is such proof, without adopting the test.

¶ 12 Not every jurisdiction requires (or has in practice found) different proof. The Second Circuit does not require separate proof of each element. In *United States v. Bagaric*[29] a Croatian terrorist group was accused of international extortion and acts of violence. The Second Circuit noted that a group of individuals may be associated in fact solely for the purpose of conducting the activities forming the pattern of racketeering activity.[30] Rejecting the view that the enterprise element requires proof of an ascertainable structure, the Court stated, "it is logical to characterize any associative group in terms of what it *does,* rather than abstract analysis of its structure."[31] The Eleventh Circuit specifically rejected *Bledsoe's* narrow construction of the enterprise element in *United States v. Hewes.*[32] *Hewes* considered Elev-

---

22. 52 F.3d 640 (7th Cir.1995).

23. *Richmond,* 52 F.3d at 646. *See also Burdett v. Miller,* 957 F.2d 1375, 1379 (7th Cir.1992) (structure shown by continuity—persistence as identifiable entity through time—and differentiation of roles); *United States v. Neapolitan,* 791 F.2d 489, 499 (7th Cir.), *cert. denied,* 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986) (association-in-fact must have ascertainable structure, with the purpose of maintaining operations directed toward an economic goal, existing apart from the predicate acts of racketeering).

24. 928 F.2d 940, 943 (10th Cir.1991), *cert. denied,* 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991).

25. *Id.* at 943–44.

26. 10 F.3d 1468 (9th Cir.1993).

27. *Blinder,* 10 F.3d at 1473–74, citing both *Bledsoe,* 674 F.2d 647, 665 (8th Circuit) and *Bagaric,* 706 F.2d 42, 55 (2nd Circuit).

28. *Blinder,* 10 F.3d at 1474, *citing United Energy Owners Committee, Inc. v. United States Energy Management Systems, Inc.,* 837 F.2d 356 (9th Cir.1988).

29. 706 F.2d 42 (2nd Cir.1983), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983). The Second Circuit did not discuss the scope of RICO claims.

30. *Bagaric,* 706 F.2d at 56.

31. *Id.*

32. 729 F.2d 1302 (11th Cir.1984). The defendants participated in a series of planned bankruptcy or "bustout" schemes, where they intend-

enth Circuit precedent in light of *Turkette* to conclude that an enterprise includes any group of persons associating formally or informally for the purpose of conducting illegal activity.[33] *Hewes* made no specific finding regarding the nature of proof necessary for each element, but the opinion appears to find sufficient proof of an enterprise based on the evidence also offered to prove the pattern of racketeering activity.

¶ 13 In *Riccobene* the Third Circuit, following *Turkette*, held an enterprise must have an existence beyond that necessary to commit each of the predicate racketeering offenses. This language does not specify whether the State must show that the enterprise has an organized structure using different evidence than that used to prove the substantive racketeering offenses. Reviewing the opinion, we note the Third Circuit found sufficient evidence that the organization "served a clearinghouse and coordination function" apart from the actions necessary to carry out any of the racketeering activities charged against the individual defendants.[34] In *Riccobene* the indictment itself alleged eight predicate RICO offenses, plus a further forty-one acts. The Government introduced evidence which went to the association's structure, and each defendant's role within it, separate from the evidence necessary to prove the predicate acts of racketeering.[35] Without explicitly so holding, the Third Circuit in this case appears to have looked for, and found, separate proof for the elements of enterprise and pattern of racketeering activity. However, in *United States v. Pelullo*,[36] the Third Circuit reviewed the *Riccobene* framework and noted that, under *Turkette*, "while the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other."[37] The Third Circuit rejected the strict "separate proof" test as inconsistent with *Turkette* and emphasized the need to review evidence on a case-by-case basis to determine whether an enterprise could be proved by the pattern of racketeering, or required separate proof.

¶ 14 This Court will join the jurisdictions which require some separate proof for each element, along with the evidence of the predicate acts. A RICO prosecution is a powerful tool, involving enhanced punishments and allowing the State to charge multiple defendants with a variety of crimes in different locations, which might not be proper against any single defendant in a particular venue. Given the important advantage RICO grants the prosecutor, and the essential nature of the enterprise element, it is not unreasonable to require a prosecutor to prove an enterprise has some structure apart from the crimes it is alleged to have committed. Otherwise the Court runs the risk of allowing any persons who happen to commit a series of crimes together to be subject to RICO.[38] While the Court must of course look at what an association of individuals does, it is also logical to look at how that association functions over time and the roles its members play, when determining whether it constitutes an ongoing organization.

■ ¶ 15 The evidence here was sufficient to satisfy the "separate proof" standard. Many witnesses, including Miskovsky, testified to his long-standing employment with a variety of law firms as both associate and partner. Witnesses testified Miskovsky's law practice always functioned as a legitimate business entity, with secretaries, bookkeepers, investigators, and attorneys performing assigned roles which furthered the organizations' activities. There is also no question that the law practice had a structure for group decision-making, with an ongoing mechanism to direct the group's affairs. Miskovsky claims the evidence failed to show any differentiation in roles among himself, Gregg and Fox. The State was not required to provide such evidence, as neither Gregg nor Fox were members of the alleged enterprise.

---

ed to get merchandise from manufacturers on credit and defraud their trade creditors. The Eleventh Circuit did not discuss the scope of RICO claims.

**33.** *Hewes*, 729 F.2d at 1311.

**34.** *Riccobene*, 709 F.2d at 224

**35.** *See, e.g., Riccobene*, 709 F.2d at 222–23, n. 10.

**36.** 964 F.2d 193 (3rd Cir.1992).

**37.** *Pelullo*, 964 F.2d at 211–212.

**38.** *Glenn*, 26 P.3d 768, 2001 OK CR 15 at ¶ 13.

¶ 16 Miskovsky claims the law practice could not count as an enterprise because not all the victims were connected to the law practice. The record does not support this claim. Evidence showed one child victim's father, a neighbor, first approached Miskovsky to consult him on a legal matter. Subsequently the families became friends, creating the opportunity for Miskovsky to commit rape by instrumentation on the victim in his swimming pool. Another child victim encountered Miskovsky at a work-related party given by Miskovsky and the man with whom he shared an office. The victim was the daughter of the other man's secretary, and neither would have been at the party absent the business relationship. A third child victim met Miskovsky when her mother approached him, seeking to give up her parental rights and place the child for adoption. Miskovsky fails to discuss the evidence that he encountered all the adult victims through his law practice. In fact, Miskovsky's argument encompasses only the child molestation allegations, overlooking the evidence of a continuing pattern of sexual abuse to adults and children extending over several years. For this reason, his claim that the enterprise was not a continuing unit must fail.

¶ 17 Miskovsky finally claims that an individual cannot constitute a criminal enterprise. The Information, of course, alleged that the criminal enterprise was Miskovsky's law practice. The United States Supreme Court recently held that a corporate owner/employee, such as Miskovsky, is a "person" distinct from the corporation, which is a legal entity in itself.[39] As the Court said, an employee who conducts a corporation's affairs through illegal acts is a person unlawfully conducting an enterprise.[40] It is clear that Miskovsky's law practice is an enterprise under RICO.

¶ 18 Finally we discuss the pattern requirement. To prove a pattern of racketeering activity the State must show (1) a relationship between the predicate acts and (2) that the acts pose a threat of continuing activity.[41] The State need not allege more than one scheme to satisfy the pattern element.[42] However, the State must show both relationship and continuity within that single scheme. A relationship requires a showing that the acts are interrelated by distinguishing characteristics and not isolated events.[43] This is not difficult to achieve; the Tenth Circuit notes that the State must merely show "that predicate acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events is essentially all that is needed."[44] This requirement was met. Miskovsky argues that the State failed to corroborate Fox's and Glenn's testimony, and further suggests the jury rejected this evidence. We have determined that sufficient independent evidence corroborated the accomplice testimony;[45] further, ample evidence supported every predicate act found by the jury. We have also determined that each predicate act was related to the affairs of the enterprise. The record does not support Miskovsky's claim that the allegations of child molestation were isolated from the offenses against adult women. Taken together, the two strands of sexual misconduct entwine to form a single rope of wrongdoing. The State showed that the predicate acts had the similar purpose of providing Miskovsky sexual gratification, with similar victims, results, and methods of commission.[46]

**39.** *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 121 S.Ct. 2087, 2091, 150 L.Ed.2d 198 (2001).

**40.** *Id.*

**41.** *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).

**42.** *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1555 (10th Cir.1992).

**43.** *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901.

**44.** *Boone*, 972 F.2d at 1555 (citations omitted).

**45.** In Proposition V, infra, we conclude that Fox and Gregg were accomplices whose testimony was corroborated by several independent witnesses.

**46.** The final predicate act, Miskovsky's attempt to suborn perjury, was committed to weaken the State's case and preserve his liberty, arguably

¶ 19 The continuity requirement is slightly more demanding. A prosecutor must either show a "closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition."[47] *H.J. Inc.* notes, that, since Congress was concerned with long-term criminal conduct, it is insufficient to show predicate acts which extend merely over weeks or months with no threat of future conduct.[48] Miskovsky suggests that predicate acts which constitute a single scheme will not satisfy the continuity requirement.[49] This suggestion has no relevance here as the predicate acts alleged against Miskovsky do not constitute a single episode. Miskovsky compares his case to *Rindal v. Seckler Co. Inc.*,[50] a cattle feeding contract suit in which a custodian of cattle sued the cattle owners and others under RICO, alleging wire and mail fraud, extortion, and interstate transportation of stolen property. Rindal claimed the continuity requirement was fulfilled by allegations of a closed-ended, single scheme to defraud, continuing from March 1987 to April 1989. The United States District Court for Montana considered this claim using four factors: "(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries."[51] The Court determined that Rindal alleged a single scheme directed towards one victim, resulting in a single injury. The Court concluded that, given that several acts of mail and wire fraud may not by themselves constitute a pattern, the duration of the scheme and the number of predicate acts were not sufficient to show continuity.[52] Using these factors Miskovsky's claim fails. Miskovsky again isolates the child molestation predicate crimes from those involving adult women. However, the evidence shows the predicate acts were part of an overall scheme and must be considered together. Reviewed as a whole, the predicate acts encompass several victims, extended over several years, and required a series of schemes of actions resulting in distinct injuries to the victims. Miskovsky committed a number of similar acts of sexual molestation and abuse against a variety of victims, some of whom were children. The State's evidence satisfied the continuity test.[53]

¶ 20 Miskovsky finally claims the evidence was insufficient to prove each individual predicate act beyond a reasonable doubt. Miskovsky appears to claim that, although the jury did not find he molested the Ware children, this evidence influenced the jury's decision on the other predicate acts. The record does not support this interpretation of the jury's findings. The jury's failure to find he committed any crimes against the Ware children does not help Miskovsky. Rather, it leads inescapably to the observation that, with one exception, the jury found Miskovsky had committed each predicate crime in which the victim identified Miskovsky in open court as her attacker. The jury failed to find Miskovsky committed one previously unreported alleged act in which consent was raised as a defense. The clear, detailed and unequivocal testimony of each victim was it-

furthering his ability to continue his predatory sexual activities.

47. *Id.*; *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902.

48. *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902; *Boone*, 972 F.2d at 1556.

49. *Schultz v. Rhode Island Hosp. Trust Nat'l Bank*, 94 F.3d 721 (1st Cir.1996)(no pattern where multiple acts were done to further a single short-term scheme which had ended).

50. 786 F.Supp. 890 (D. Montana 1992).

51. *Rindal*, 786 F.Supp. at 897.

52. *Id.*

53. The State appears to misunderstand the thrust of the continuity requirement. Noting that Oklahoma's RICO statute requires the last predicate act charged to have occurred within three years of a prior occasion, while the federal statute has a ten-year period, the State suggests continuity is simply not an issue. The Supreme Court, and other courts discussing the continuity requirement, have not focused on the time limit necessary for a RICO prosecution. "Continuity" refers to the nature of the conduct. The State is mistaken in suggesting that the Legislature has removed the requirement by enacting a smaller statutory period than that in the federal statute. The courts must still determine whether the nature of the conduct alleged constitutes a continuing activity, either by repeated instances within a closed time period or by continuing instances with a threat of future repetition.

self sufficient to support the jury's findings of the essential elements of each predicate act beyond a reasonable doubt.[54]

¶ 21 In summary, the RICO statute encompasses this prosecution. The State offered sufficient evidence to prove both an enterprise and a pattern of racketeering activity. Proposition VI is denied.

■■■ ¶ 22 In Proposition XI Miskovsky claims the RICO prosecution against him violates the constitutional prohibition against ex post facto laws. Miskovsky argues he should not have been charged under RICO since almost all the predicate crimes occurred before RICO was enacted. In interpreting issues of first impression under the state RICO statute, we may look to federal law.[55] The Ninth Circuit has held that prosecution under RICO does not violate the prohibition against ex post facto laws under similar circumstances.[56] The Ninth Circuit determined that the statute does not retroactively alter either definitions of crimes or existing punishments because RICO specifically requires a defendant to commit a predicate act of racketeering activity after the date of enactment.[57] This argument is persuasive. Nothing in the statutory language suggests the Oklahoma Legislature intended RICO prosecutions to reach only crimes committed in a pattern of activity beginning after November, 1988. We have previously determined the Oklahoma statute was closely patterned after the federal statute,[58] and the federal legislative history clearly shows the lawmakers' determination to include as many acts as possible in an ongoing pattern. As prosecutors argued at trial, all Miskovsky had to do to avoid RICO charges was stop his activity. Had he not committed the enumerated crimes against Delmaree Wright, Bridgette Green, or Barbara Becker, he could not have been charged under RICO. Proposition XI is denied.

■■■ ¶ 23 We find in Proposition I that the affidavit supporting the search warrant in the case provided a substantial basis for concluding that contraband or evidence of a crime would be found in a particular place.[59] We find in Proposition II that the trial court did not err by refusing to recuse, as Miskovsky has failed to show any way in which the trial court demonstrated bias or prejudice against him.[60] We further find the trial judge did not act as a magistrate, but acted within her judicial role as the custodian of court files, and as the sitting judge in the case, in enforcing district court rules.[61] We find in Proposition III that the trial court's limitations on Miskovsky's request to represent himself with stand-by counsel were reasonable and not an abuse of discretion; [62] the trial court properly took into account Miskovsky's extensive courtroom experience when assessing his need for guidance in understanding basic courtroom protocol and trial procedures and overcoming obstacles to *pro se* representation.[63] We find in Proposition IV that the trial court did not taint the jury during introductions preceding voir dire.[64]

54. *Spuehler v. State*, 1985 OK CR 132, 709 P.2d 202, 203–04.

55. 22 O.S.1991, § 1419.

56. *United States v. Campanale*, 518 F.2d 352, 364–65 (9th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

57. *Id. Campanale* cited the Senate Judiciary Committee report which also made this point. *See also United States v. Field*, 432 F.Supp. 55, 59 (S.D.N.Y.1977), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978).

58. *Glenn*, 26 P.3d 768, 2001 OK CR 15 ¶ 4.

59. *Bryan v. State*, 1997 OK CR 15, 935 P.2d 338, 353, *cert. denied*, 522 U.S. 957, 118 S.Ct. 383, 139 L.Ed.2d 299; *Gregg v. State*, 1992 OK CR 82, 844 P.2d 867, 874. The fact that the evidence sought was not found does not lessen the validity of the magistrate's determination of probable cause, based on the extremely detailed material in the affidavit.

60. *Fitzgerald v. State*, 1998 OK CR 68, 972 P.2d 1157, 1163; *Mehdipour v. State*, 1998 OK CR 23, 956 P.2d 911, 915. In fact, the record shows that the trial court was extremely patient with Miskovsky's difficult behavior throughout a long and difficult trial process.

61. Rule 44, *Rules of the Seventh Judicial District* (2001); Rule 26, *Rules for District Courts of Oklahoma*, Title 12, Ch. 2, App. (2001).

62. *Parker v. State*, 1976 OK CR 293, 556 P.2d 1298, 1302.

63. *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S.Ct. 944, 954, 79 L.Ed.2d 122 (1984); *Parker*, 556 P.2d at 1302.

64. We reject Miskovsky's suggestion that the trial court's explanation of the deputy's presence amounts to trying him in shackles. We note

We find in Proposition V that no corroboration was necessary for accomplice testimony regarding the Ware children to be admissible in preliminary hearing,[65] and several independent witnesses corroborated the accomplice testimony at trial.[66]

¶ 24 We find in Proposition VII that error during Ms. Stevens's and Ms. Becker's testimony was cured by admonition to the jury;[67] we find evidence of the Bar Association proceedings against Miskovsky, the picture seized from his office, and evidence supporting the allegations regarding the Ware children, were relevant.[68] Thus we find the trial court did not err in not granting Miskovsky's requests for mistrials on these issues.[69] We find in Proposition VIII that sufficient evidence supports Miskovsky's conviction for attempted subornation of perjury.[70] We find in Proposition X that Miskovsky's sentence is not so disproportionate as to shock the conscience.[71] We further find there was no prosecutorial misconduct during voir dire or trial court bias which could have improperly affected the jury's decision on punishment.[72]

## Decision

¶ 25 The Judgments and Sentences of the District Court are AFFIRMED.

LUMPKIN, P.J., and LILE, J., concur in results.

JOHNSON, V.P.J., and STRUBHAR, J., concur.

LUMPKIN, Presiding Judge: Concur in Results

¶ 1 I concur in the Court's decision to affirm the judgments and sentences in this case. As I stated in my separate vote in *Glenn v. State*, 2001 OK CR 15, 26 P.3d 768, 772–774, I believe the Oklahoma Legislature provided broader application in the Oklahoma Corrupt Organizations Prevention Act, 22 O.S.1991, § 1401, *et seq.* (OCOPA), than that provided in the federal act. While the Oklahoma Legislature stated in Section 1419, the courts of this state *"may* follow the construction given to federal laws by the federal courts", it did not require us to do so. Our state OCOPA statutes should be interpreted independently to apply the intent of the Oklahoma Legislature and not the Federal Congress. That intent is evidenced through the limitation of the application of the act to those crimes defined as "Racketeering activity" in Section 1402(10). In addition, the Legislature has clearly defined what constitutes an "enterprise" under OCOPA. *See* 22 O.S.Supp.1993, § 1402(2).

¶ 2 I am not enamored with either the use of federal caselaw to define terms that are already defined in the Oklahoma Statutes or the verbal gymnastics required to apply those statutes to this case. Neither am I willing to limit the plain language of the statutes to entities/individuals organized to conduct a legal business but who also commit criminal acts which come within our OCOPA statutes. The Court's opinion gives this im-

Miskovsky completely fails to show prejudice from this alleged error, as counsel stated Miskovsky was in jail and Miskovsky discussed the fact while on the stand.

65. *Perry v. State*, 1988 OK CR 252, 764 P.2d 892, 896; *Bennett v. State*, 1977 OK CR 303, 570 P.2d 345, 348.

66. 21 O.S.1991, § 742.

67. *Welch v. State*, 2000 OK CR 8, 2 P.3d 356, 369–70, *cert. denied*, 531 U.S. 1056, 121 S.Ct. 665, 148 L.Ed.2d 567; *Al–Mosawi v. State*, 1996 OK CR 59, 929 P.2d 270, 284, *cert. denied*, 522 U.S. 852, 118 S.Ct. 145, 139 L.Ed.2d 92 (1997) (admonishment cures error unless error appears to have determined verdict).

68. 12 O.S.1991, §§ 2401.

69. *Knighton v. State*, 1996 OK CR 2, 912 P.2d 878, 894 *cert. denied*, 519 U.S. 841, 117 S.Ct. 120, 136 L.Ed.2d 71 (decision to deny or grant mistrial within trial court's discretion).

70. *Spuehler v. State*, 1985 OK CR 132, 709 P.2d 202, 203–04.

71. *Jones v. State*, 1998 OK CR 36, 965 P.2d 385, 386.

72. The trial court did not abuse its discretion in deciding to (a) limit questioning in voir dire and (b) remove Miskovsky from the courtroom when his continued disturbance affected the jury's ability to hear testimony. *Cannon v. State*, 1998 OK CR 28, 961 P.2d 838, 844; *Mehdipour*, 956 P.2d at 916. Miskovsky has shown no prejudice from the trial court's failure to admonish the jury before evening recess. *Goforth v. State*, 1979 OK CR 49, 595 P.2d 813, 815.

pression. Regardless of whether an "enterprise," as defined by the statute, was created to engage primarily in legal or illegal activities, it could still be prosecuted if it committed a pattern of racketeering activity which meet the requirements of the state OCOPA statutes.

¶ 3 Finally, I am afraid this opinion fails to give trial judges and attorneys the clear direction they need to administer our OCOPA statutes. This is a complex area of law, and this Court should always seek to clarify, rather than complicate, the application of our statutory language. Due to the breadth of my concerns with the Court's analysis, I can only concur in results.